UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARJORIE E. KINGSBERY<br>　　　　Plaintiff | CIVIL ACTION: |
| versus | |
| DAVID PADDISON,<br>ATTORNEY-AT-LAW LLC | JUDGE |
| and | MAGISTRATE |
| DAVID R. PADDISON, INDIVIDUALLY<br>　　　　Defendants | |

## COMPLAINT

NOW COMES Plaintiff Marjorie E. Kingsbery (Plaintiff, or Kingsbery) who bring this action pursuant to the Fair Labor Standards Act and the Louisiana Wage Statute. For her Complaint she avers as follows:

### I. INTRODUCTION

1. Plaintiff bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and under the Louisiana Wage Statute, La. R. S. 23:631 to recover unpaid wages, unpaid minimum wages, unpaid overtime wages and statutorily authorized liquidated and penalty damages as well as reasonable attorney's fees and costs associated with this litigation.

2. Defendants' record-keeping and compensation practices created willful failures and refusals to pay proper minimum wage and overtime compensation to Plaintiff for all her hours worked, and in some cases failed to pay any wages for hours worked at all, all in violation of the FLSA.

1

3. In violation of the Louisiana Wage statute, Defendant terminated Plaintiff and failed to pay timely all compensation owed to Plaintiff at the time of his termination, including but not limited to unpaid minimum wages and unpaid overtime wages for off-the-clock hours Plaintiff suffered or was permitted to work.

## II. PARTIES

4. Plaintiff Marjorie E. Kingsbery, is an adult citizen of the United States and resident of Louisiana. At all time relevant she was a qualified paralegal who had worked for Defendant well and faithfully for nine years. Her regular duties included, in addition to his interstate law practice, managing real estate properties in Louisiana and Idaho. She engaged in interstate telecommunications and correspondence on a regular basis. She conducted interstate credit card transactions, issued interstate subpoenas and regularly conducted business with interstate clients. .

5. Defendant David Paddison, Attorney-at-Law LLC is a limited liability company registered in the State of Louisiana consisting of one individual, David L. Paddison who is manager, member and agent.

6. Defendant David R. Paddison is a natural person of the full age of majority and a resident of St. Tammany Parish, State of Louisiana. At all times pertinent, David R. Paddison, solely and individually, engaged in the illegal conduct complained of herein.

7. Defendant David Paddison, Attorney-at-Law LLC and Defendant David R. Paddison are, in fact, alter egos of the other and operated at all times relevant hereto as a single economic unit under the jurisprudential economic realities test. For pleading purposes and unless otherwise specified they will collectively be referred to as "Defendant".

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is brought under the Fair Labor Standards Act.

9. This Court has personal jurisdiction over Defendant David Paddison, Attorney-at-Law LLC because it conducts business and employs individuals in the judicial district.

10. This Court has personal jurisdiction over Defendant David R. Paddison because he resides within the judicial district and his illegal conduct occurred in this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b); business records are kept and all or a substantial part of the events giving rise to the claims occurred within this judicial district, including but not limited to the unlawful employment and compensation practices described herein.

### IV. STATEMENT OF FACTS

12. During the period November 2017 through the date of her termination Plaintiff was an hourly employee of Defendant who regularly worked an average of seven overtime hours per week for Defendant, attending to both his legal and general business affairs.

13. At the outset of the COVID outbreak in the United States, on or about March 16, 2020, Plaintiff asked Defendant if she (Plaintiff) was overacting about not wanting people and/or clients in the office. He responded by saying, "Neither do I; we have no protocol."

14. On or about March 22, 2020, Plaintiff stated to Defendant that she wanted to begin working from home and asked his thoughts on this. He responded saying, he "wanted to meet with Yvonne and me on Tuesday or Wednesday. We need to be cautious and discuss what we can do". Plaintiff responded that she will be there in the morning to get

her work, will discuss things with him at that time, and that she could talk on the phone with Yvonne but stated that she didn't think they should actually meet (in person). Defendant then responded, "Are you and Roy OK?"

15. On or about March 22, 2020, the Governor issued the "Stay at Home" order.
16. On March 23, 2020, Plaintiff went to the office to gather her work to be able to work from home. While there, the Defendant called and his first words were, "You need to file for unemployment". When the Defendant came into the office, Plaintiff went into his office to speak with him and told him she was terrified of the virus and really wanted to work from her home. He appeared to dislike the idea but did not tell her his reasoning. Plaintiff also told him that she was not going to do anything if she was not going to be paid since he had mentioned filing for unemployment. His cell phone rang and he announced that he had to leave but would be right back. In past times, when he left, he would be away for over 2 to 3 hours or more. Plaintiff then left with her work assuming they could speak over the telephone. (Defendant was running in and out of the office and allowing clients, deliveries, etc. to resume at the office.) About 12:15, he texted her asking her to phone him and stating that he did not know she was leaving. She replied that she did not know he was not going to pay her. He said, "I never said that". She replied that he had told her to file for unemployment and that she could not get both at which time he responded," It just seems that you want to quit. Everyone is freaked out, but if you just leave and don't communicate, what am I supposed to assume?" Plaintiff then responded she did not understand his text – that she had told him the previous day that she wants to work from home as all of the staff should and that she did not want to

meet (in person) with anyone at the office. She stated, "In my mind, your telling me to file for unemployment means you do not intend to pay me", etc.

17. On or about, March 30, 2020, Defendant texted Plaintiff to find out whether she was coming back and to discuss the future. Plaintiff responded, "Yes" and that she would phone him in the afternoon.

18. On or about March 31, 2020, Plaintiff attempted to work from her home but discovered that the Defendant had locked her out of all Resource Bank accounts. She then sent him a text that she was unable to start on billing because she needed to reconcile the escrow and operating accounts. He responded for her to please do the billing and he will pay her the normal salary for the week.

19. On or about, April 1, 2020, Defendant advised that he was disappointed that she did not do the billing and stated that it seemed as if she and Kathy had quit. It was very sad, and that he wished she would not quit. Plaintiff responded with, "What are you talking about? I spoke with you yesterday?"

20. On or about April 3, 2020, Plaintiff completed the billing and sent the billing statements to the clients. Plaintiff worked about 10 hours on this task then texted the Defendant that she had billed out $32,776.00.

21. On or about April 5, 2020, Plaintiff processed her check for the entire week as had been discussed and left the check on Paddison's chair (for signing).

22. On or about April 6, 2020, Defendant texted multiple times asking Plaintiff asking if she was going to work (in office), that he needed assistance in getting something out. Plaintiff did not see this text until later that evening due to having taken a muscle relaxer and…." being knocked out and in bed all day with a pulled muscle". Plaintiff apologized

for being unavailable. Defendant advised he needed a Bill-of-Sale for a car and he would call her the following day and she could help him at that time.

23. On or about April 7, 2020, Defendant texted Plaintiff to call the office. Plaintiff asked about her check and if she needed to pick it up. There was no response, and another text was sent to the Defendant.

24. On or about, April 8, 2020, Plaintiff texted again stating she really needed her check. (It had been several days since she left it for signature.) He responded that he would call her soon. Plaintiff then sent an e-mail to the Defendant after he had sent an ugly text message to Kathy and had not paid them.

25. On or about April 9, 2020, Plaintiff received an e-mail which stated, " I will certainly pay you for your time, just give me your hours and please send the hours worked as I cannot pay you and hire others to do your job and fill in". Plaintiff responded to his message after which he replied telling her not to come to the office.

26. On or about April 10, 2020, Plaintiff sent an e-mail outlining the situation of events that have transpired since March 22, 2020.

27. On or about April 12, 2020, Defendant falsely responded that Plaintiff had refused to communicate for 2 weeks and that he was treating the Plaintiff as a furloughed employee.

28. On or about April 13, 2020, Defendant emailed Plaintiff that he needed to fill out the "layoff" forms and asked if Plaintiff was owed anything.

29. On or about April 14, 2020, Plaintiff texted that he owed her for 10 hours for which she had not received payment. She also advised that her husband Roy was going to return all files that were in her possession to the office. He replied that everything should be left at

the door with a list of what she had done for the 10 hours and what she had taken (from the office). Plaintiff replied that the 10 hours was for the March billing.

30. On or about July 9, 2020, Plaintiff emailed again requesting the payment for the 10 hours plus 2 vacation days. There was no response.

31. On or about July 30, 2020, Plaintiff sent a certified mail request for her final paycheck and payment for her accumulated overtime. This certified mail number 7020 0090 0001 8667 1908 was delivered to his office and signed for on August 5, 2020.

32. On or about August 12, 2020, a certified mail item from the Defendant was left in Plaintiff's mailbox (with the green card detached – no one signed for it). The correspondence advised that he disputed the entirety of (her) letter and there is an ongoing investigation regarding any records missing from the office.

## V. COUNT ONE: VIOLATION OF THE FAIR LABOR STANDARDS ACT

33. Defendant has gross annual sales equal to or greater than $500,000, using the economic realities tests established by jurisprudence.

34. Plaintiff, as an employee of Defendant, engaged in interstate commerce including but not limited to selling, producing, or otherwise working on goods or materials that came from a state other than Louisiana.

35. At all relevant times, Plaintiff was compensated at an hourly rate.

36. Plaintiff regularly worked time in excess 40 hours in a workweek for which she was not compensated.

37. Defendant did not compensate Plaintiff at a rate of one and one-half times Plaintiff' regular rate of pay for all hours Plaintiff worked more than 40 hours in a workweek and

did not compensate Plaintiff at all for hours worked in April, 2020, failing to pay her even the federally mandated minimum wage for that time period.

38. Defendant knew that Plaintiff worked hours for which Plaintiff was not compensated properly.

39. Defendant either knew their conduct was illegal or showed reckless disregard as to whether his conduct violated the law.

40. Defendant's actions constitute knowing, intentional and willful violations of the FLSA.

41. Plaintiff was damaged as a direct and proximate result of Defendant's actions, policies and practices and failure to compensate her properly.

### VI. COUNT TWO: VIOLATION OF THE LOUISIANA WAGE STATUTE

42. At the time of her termination, Plaintiff was owed gross wages of $ 9,888.00.

43. On August 5, 2020, Plaintiff made demand on Defendant by certified mail addressed to where she worked and regularly got paid, for her unpaid wages and benefits along with penalty wages and attorney's fees.

44. To date, Defendant has failed and refused to make any such payment.

45. Pursuant to La. R. S. 23:631 et seq. Defendant was obligated to pay all outstanding wages no later than fifteen (15) days of Plaintiff's termination or the next regular pay period which was Friday, August 20, 2020.

46. As a result of his failure to pay outstanding wages or at least tender an undisputed portion within fifteen days of Plaintiff's termination, Defendant is obligated to pay Plaintiff penalty wages of one day's pay for every day her pay is delayed up to a maximum of ninety (90) days, whichever is less.

47. Plaintiff's daily rate of pay is $243.60 per day.

48. At the time of suit, penalty wages in the amount of $ 21,924.00 had accrued for failure to timely tender wages and remain unpaid against Defendant representing the maximum of 90 days of penalty wages due.

### VII. PRAYER FOR RELIEF

CONSIDERING THE FOREGOING, PLAINTIFF MARJORIE E. KINGSBERY PRAYS, WITH RESPECT TO HER FLSA CLAIM, THAT THE COURT:

a. Enter judgment declaring that Defendant's policies and practices complained of herein violate the FLSA;

b. Enjoin Defendant and his agents from engaging in the policies and practices complained of herein;

c. Enter judgment against Defendant and award to Plaintiff damages for unpaid wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, punitive damages, pre-judgment interest and post-judgment interest, all in amounts to be determined at trial;

d. Enter judgment requiring Defendant to pay to Plaintiff costs and expenses of bringing this action, including but not limited to reasonable attorney's fees, expert's fees and costs.

AND WITH RESPECT TO HER LOUISIANA WAGE ACT CLAIM PLAINTIFF PRAYS THAT THE COURT:

e. Receive this pleading with preference and priority as a Summary Proceeding, adopting La. R. S. 23:631 B and Louisiana Code of Civil Procedure Article 2592, according to its remedial purpose, and promptly order Defendants David Paddison, Attorney-At-Law LLC and David R. Paddison, Individually to show cause before the Court, in an

evidentiary hearing, why Plaintiff's Petition should not be granted as prayed for as set out in the suggested Order attached hereto, and

f. After due proceedings had, award her outstanding and penalty wages in the combined sum of $31,812.00 award her legal interest from date of judicial demand at the Louisiana judicial interest rate, reasonable attorney's fees taxed as costs pursuant to La. R.S. 23:632 and grant unto her all general and equitable relief.

Respectfully submitted,

/s Dale E. Williams
Dale E. Williams, Bar #18709
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile: (985) 892-2640
dale@daleslaw.com

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that I have read the foregoing Complaint, and the allegations contained in it are true and correct to the best of my knowledge and belief.

Executed in Covington, Louisiana on this November 23, 2020.

_____
MARJORIE E. KINGSBERY

To Serve:

David R. Paddison, Esq. and David Paddison Attorney-at-Law LLC
600 Covington Center
Covington, LA 70433