```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


MARJORIE E. KINGSBERY                               CIVIL ACTION


v.                                                  NO. 20-3192


DAVID PADDISON,                                     SECTION "F"
ATTORNEY-AT-LAW LLC, ET AL.
```

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss. For the reasons that follow, the defendants' motion is GRANTED.

**Background**

This lawsuit arises from a paralegal or administrative assistant's allegations that her former employer failed to pay her wages earned before she stopped working for the law office over a disagreement regarding whether she could work from home during the pandemic.

The allegations of the complaint are taken as true. Marjorie Kingsbery worked for nine years as an "hourly employee" for David Paddison at David Paddison's law office, David R. Paddison, Attorney-at-Law, LLC.[1] Ms. Kingsbery was a "qualified paralegal"

---

[1] Ms. Kingsbery alleges that she was an "hourly employee."  In another paragraph of the complaint, Ms. Kingsbery indicates that she may have received a weekly "salary." In still another paragraph

1

who "attend[ed] to both [Paddison's] legal and general business affairs" and whose regular duties included "telecommunications and correspondence" for Mr. Paddison's law office, as well as "managing real estate properties in Louisiana and Idaho," conducting "interstate credit card transactions," issuing "interstate subpoenas," and "conduct[ing] business with interstate clients."

From November 2017 until her "termination," Ms. Kingsbery worked an average of seven overtime hours per week. When the COVID-19 pandemic began, Ms. Kingsbery and Mr. Paddison had some vague communications concerning whether Ms. Kingsbery would be permitted to work from home. After the Governor's stay-at-home order issued, Ms. Kingsbery went to the office to gather documents that would enable her to work from home. Ms. Kingsbery was concerned about the virus and about the fact that Mr. Paddison was in and out of the office and allowing clients and deliveries at the office.

Mr. Paddison called and told her that she "need[ed] to file for unemployment." When Mr. Paddison arrived at the office on March 23, 2020, Ms. Kingsbery then told Mr. Paddison that she was terrified of the virus and wanted to work from home. Mr. Paddison "appeared to dislike the idea" then said he had to leave. Not knowing when he would be back, Ms. Kingsbery left with her work.

---

of the complaint, she also alleges that her "daily rate of pay" was $243.60/day.

He later contacted her saying that he did not know she was leaving; she said she was worried she would not get paid. He said that he "never said that." Mr. Paddison explained that Ms. Kingsbery needed to communicate. But the miscommunication continued.

On March 30, 2020, Mr. Paddison texted Ms. Kingsbery to find out whether she was returning to the office and to discuss the future. Ms. Kingsbery replied "yes" and that she would call him that afternoon. The next day, Ms. Kingsbery attempted to work from her house, but Mr. Paddison "had locked her out of all Resource Bank accounts." Ms. Kingsbery texted Mr. Paddison that she was not able to do the billing because she needed to reconcile the escrow and operating accounts. He told her to do the billing "and he will pay her normal **salary** for the week." (emphasis added).

Over the next few days, Ms. Kingsbery alleges that she worked from home and that Mr. Paddison continued to question her. On April 1, 2020, Mr. Paddison told Ms. Kingsbery that he was disappointed that she did not do the billing and that it seemed as if she and another employee had quit, which perplexed Ms. Kingsbery because she had spoken with Mr. Paddison the day before. Two days later, Ms. Kingsbery completed the billing, which took her 10 hours, then she texted Mr. Paddison that she had "billed out $32,776.00." On April 5, 2020, Ms. Kingsbery processed her check for the week and left it on Mr. Paddison's chair for signing.

3

The next day, Mr. Paddison texted Ms. Kingsbery several times asking if she was going into the office because he needed assistance. But Ms. Kingsbery had taken a muscle relaxer, which "knocked [her] out," so she did not see the text until later that evening. Ms. Kingsbery apologized to Mr. Paddison, who advised that he needed a bill of sale for a car and he stated that he would call her the following day.

On April 7, 2020, Ms. Kingsbery called the office as instructed; when she asked about her check, "[t]here was no response[.]" The next day, Ms. Kingsbery texted Mr. Paddison stating that she needed her check. He said he would call her soon. Ms. Kingsbery then emailed Mr. Paddison "after he had sent an ugly text message to [another employee] and had not paid them."

Communication continued to deteriorate. On April 9, 2020, Mr. Paddison emailed Ms. Kingsbery, stating that he would pay her for her time, asking that she provide the hours worked, and noting "I cannot pay you and hire others to do your job and fill in." Mr. Paddison told Ms. Kingsbery not to come into the office. The next day, Ms. Kingsbery emailed Mr. Paddison offering him a summary of "events that ... transpired since March 22, 2020." Two days later on April 12, 2020, Mr. Paddison responded that he was treating Ms. Kingsbery as a furloughed employee because she had refused to communicate for two weeks. The next day, Mr. Paddison

4

emailed Ms. Kingsbery asking if she was owed anything because he needed to complete "layoff forms."

On April 14, 2020, Ms. Kingsbery texted Mr. Paddison that he owed her for the 10 hours of billing work; she stated that her husband was going to return to the law office all files she had taken home.  Mr. Paddison responded that all files should be left at the door with a list of what she had done for the 10 hours and what she had taken from the office.  Ms. Kingsbery replied that the 10 hours was for the March billing.

Almost three months later, on July 9, 2020, Ms. Kingsbery still had not received payment for the 10 hours "plus 2 vacation days."  But when she emailed Mr. Paddison to inquire, he did not respond.  On July 30, 2020, Ms. Kingsbery sent a request, by certified mail, for her final paycheck and seeking payment for accumulated overtime; the mail was signed for on August 5, 2020. A week later, a certified letter (for which no one signed) was left in Ms. Kingsbery's mailbox; Mr. Paddison wrote that he disputed the entirety of her letter and that he was investigating records missing from the office.

On November 23, 2020, Ms. Kingsbery sued David Paddison and his law office, David Paddison, Attorney-at-Law LLC, alleging that (i) the defendants failed to compensate her for regularly working overtime and failed to pay her at all for hours worked in April

5

2020, in violation of the Fair Labor Standards Act; and (ii) the defendants' failure and refusal to pay her unpaid wages, benefits, penalty wages, and attorney's fees violated the Louisiana Wage Statute.[2]  The defendants now move to dismiss the complaint for improper service of process pursuant to Rule 12(b)(4) and (5) and for failure to state a claim pursuant to Rule 12(b)(6).

I.

*A.*

Rule 12(b)(4) of the Federal Rules of Civil Procedure allows a defendant to attack the form of the process, rather than the method by which it is served.  By contrast, Federal Rule of Civil Procedure 12(b)(5) allows a party to advance a defense based on insufficient service of process.  Fed. R. Civ. P. 12(b)(5); 5B Charles Alan Right & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1353 (3d ed. 2013)("Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.").  Dismissal is appropriate under Rule 12(b)(5) if, for example, service of process is not accomplished in a timely manner or was not served in the appropriate manner.  Thomas v. New Leaders for New Sch., 278 F.R.D. 347, 349-50 (E.D. La. 2011).

---

[2] "At the time of her termination," Ms. Kingsbery alleges, she "was owed gross wages of $9,888.00."  At the time she filed this lawsuit, Ms. Kingsbery alleges that she is owed $21,924.00 in penalty wages.

6

"In the absence of valid service of process, proceedings against a party are void." Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, 635 F. 2d 434, 435 (5th Cir. 1981). "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." Systems Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)(citations omitted); Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013). District courts exercise "broad discretion in determining whether to dismiss an action for ineffective service of process." George v. U.S. Dep't of Labor, 788 F.2d 1115, 1116 (5th Cir. 1986).

Federal Rule of Civil Procedure 4(e) states that individuals like Paddison "may be served in a judicial district of the United States" two ways. First, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).[3] Second, an individual may be served by

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to received service of process.

---

[3] Louisiana law requires service on an individual in the same manner provided for under Federal Rules of Civil Procedure Rule 4(e)(2). See La. Code. Civ. Pro. art. 1232-1235.

7

Fed. R. Civ. P. 4(e)(2).

When considering whether a place is an individual's "dwelling or usual place of abode," the Court should "consider the situation from a practical standpoint" and "liberally construe[] the provision to effectuate service if actual notice has been received by the defendant[.]" Nowell v. Nowell, 384 F. 2d 951, 953 (5th Cir. 1967)(citation omitted)(holding that service on the resident manager of the defendant's apartment complex was proper).

The federal rules also dictate the procedure for service on an LLC.  A plaintiff has two options when serving a limited liability company like Paddison's law office. First, a plaintiff may serve an LLC under the law of the state in which the district court is located. Fed. R. Civ. P. 4(h)(1)(A). Louisiana state law dictates that service of process should be made "by personal service on any one of its agents for service of process." La. Code. Civ. Pro. art. 1266(A). If a limited liability company has no designated agent for service of process or if a plaintiff is incapable of serving the designated agent, the limited liability company may be served through:

> (1) Personal service on any manager if the management of the limited liability company is vested in one or more managers or if management is not so vested in managers, then on any member. (2) Personal service on any employee of suitable age and discretion at any place where the business of the limited liability company is regularly conducted.

8

La. Code. Civ. Pro. art. 1266(B).

As to this first option for serving an LLC, the plaintiff must also certify that service through the registered agent was not possible after due diligence. See <u>Sims v. Landrieu Concrete & Cement Indus. LLC</u>, No. 18-9932, 2020 WL 2617867, at *3 (E.D. La. May 24, 2020). Failure to personally serve a registered agent or certify that, after due diligence, service was not possible, on a registered agent constitutes insufficient service of process. See <u>id.</u>

Second, a plaintiff may serve an LLC by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). This "delivery" refers to personal service and not service by mail. <u>Wesenberg v. New Orleans Airport Motel Associates TRS, LLC</u>, No. 14-1632, 2015 WL 5599012, at *2 (E.D. La. Sept. 22, 2015)(collecting cases).

*B.*

Here, the plaintiff has failed to carry her burden to show that service of process was effected in accordance with the law as to either defendant. Kingsbery submits Proof of Service forms signed by Sgt. Rhett Rodriguez as evidence that service was perfected on both defendants. But these Proof of Service forms

fail to show that service was perfected consistent with federal and state law. In fact, they do the opposite.

As to the first defendant, Mr. Paddison, the Proof of Service form states that service was delivered at 600 Covington Center, Covington, LA 70433 through the secretary, "Catherine."  It is undisputed that 600 Covington Center is the address of David R. Paddison, LLC, the law office, not Mr. Paddison's residence. When serving an individual defendant, Kingsbery had three options. First, Kingsbery could have served Mr. Paddison personally. Second, Kingsbery could have served Mr. Paddison by leaving a copy of the summons and complaint at his home with a person of suitable age. Third, Kingsbery could have served Mr. Paddison through delivering a summons and complaint to an agent authorized by law. Ms. Kingsbery fails to show that she served Mr. Paddison through any of the three authorized means. Instead, the record indicates that Ms. Kingsbery's process server delivered the summons and complaint to the law office's secretary, Catherine, at Mr. Paddison's place of business, not his home. Because Mr. Paddison was not served personally nor were the summons and complaint left at his home, Mr. Paddison was not properly served.

As for the second defendant, David R. Paddison, LLC, the same insufficient method of service was attempted.  Kingsbery had two options to serve the LLC: through its registered agent (or present a certified statement saying this was not possible) or through

10

delivering a summons and complaint to any agent authorized by appointment or by law. La. Code. Civ. Pro. art. 1266(A-B); Fed. R. Civ. P. 4(h)(1)(B). The rules require MS. Kingsbery to personally serve David R. Paddison in either his role as registered agent or manager or member of the LLC. Ms. Kingsbery failed to serve the LLC in either of these manners. Instead, Ms. Kingsbery served the LLC by delivering the summons and complaint to the secretary, Catherine, whom is neither the registered agent, nor an agent authorized by appointment or by law. See Broadcast Music, Inc. v. Center Stage of Lake Charles, LLC, No. 16-75, 2017 WL 11507811, at *1 (W.D. La. Feb. 24, 2017)(where employee and LLC were distinct defendants to a lawsuit, personal service on employee of -- and registered agent for -- LLC is not proper service on the LLC even though employee and LLC registered agent had actual knowledge of the lawsuit). Therefore, David R. Paddison, LLC was not properly served.

C.

The Federal Rules requires dismissal of a complaint if the defendant has not been properly served within ninety (90) days after the complaint has been filed, unless the plaintiff shows "good cause." Fed. R. Civ. P. 4(m); McDonald v. United States, 898 F. 2d 466, 467 (5th Cir. 1990)(equating "good cause" to "excusable neglect" or "some showing of good faith . . . and [a] reasonable basis for noncompliance within the time specified.").

If the 90-day timeframe has expired, and a plaintiff fails to provide good cause for ineffective service, the Court has discretion to order that service be perfected within a specified timeframe. Fed. R. Civ. P. 4(m). Circumstances that ordinarily warrant an extension are limited. Newby v. Enron Corp., 284 F. App'x 146, 149 (5th Cir. 2008). For instance, if an "applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service[,]'" an extension may be warranted. Id.

Here, the 90-day timeframe has not yet lapsed. Ms. Kingsbery filed the complaint on November 23, 2020 and therefore she has until at least February 24, 2021 to perfect service. Ms. Kingsbery has failed to perfect proper service thus far, despite being on notice that the defendants objected to service of process.[4]

Given that the record demonstrates that the method the plaintiff employed to serve both defendants failed to comply with the law, the plaintiff has failed to remedy the defect despite being on notice, and the plaintiff has failed to request additional time within which to effect service, the complaint must be

---

[4] Although the plaintiff disputes that the mode of service was improper, she offers no alternative argument concerning good cause for an extension should the Court reject her arguments that service was properly effected.

12

dismissed without prejudice to the plaintiff requesting additional time or effecting proper service on the defendants.[5]

Accordingly, IT IS ORDERED: that the defendants' Rule 12(b)(5) motion to dismiss for insufficient service of process is GRANTED, and the plaintiff's claims are hereby dismissed without prejudice to the plaintiff effecting service in the proper manner on the defendants.

New Orleans, Louisiana, February 22, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] Having determined that service of process was improper, it is premature for the Court to reach the defendants' alternative arguments that the plaintiff's allegations fail to state a claim on which relief may be granted.

13