UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARJORIE E. KINGSBERY | * | |
| (Plaintiff) | * | CIVIL ACTION NO. 20-3192 F(5) |
| | * | |
| VERSUS | * | |
| | * | |
| DAVID PADDISON, INDIVIDUALLY | * | |
| | * | |
| AND | * | |
| | * | |
| DAVID PADDISON, | * | |
| ATTORNEY-AT-LAW, LLC | * | |
| (Defendants) | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

This Memorandum is submitted on behalf of defendants, David Paddison, individually ("Paddison") and David R. Paddison, Attorney-at-Law, LLC (the "Law Firm") in support of their Motion to Dismiss to dismiss the plaintiff's claims for unpaid minimum wages and overtime under the Louisiana Wage Statute pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) on the grounds that the Complaint states no claim upon which relief may be granted as to Kingsbery's state law claims in that they are preempted by federal law. Paddison and the Law Firm further move to dismiss Kingsbery's complaint on the grounds that it is impermissibly vague and further to dismiss Kingsbery's claims under the FSLA on the grounds that she was at all times an exempt administrative and/or professional employee under the FSLA, and that Kingsbery's claims under the FLSA are at least partially if not entirely barred by the applicable statute of limitations, all as discussed below.

### A.   Legal Standard Under Rule 12(b)(6)

The FRCP 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The allegations of a complaint must be "simple, concise and direct." FRCP 8(d)(1). The United States Supreme Court has stated that the plaintiff's allegations must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm, Inc. v. Broudo,* 544 U.S. 336, 346 (2005). A complaint may be dismissed under Rule 12(b)(6) when the complainant fails to allege any set of facts in support of her claim which would entitle her to relief. *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complainant must plead sufficient facts to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *quoting, Bell Atl. Corp. v. Twombly* 550 U.S. 544, 547 (2007). A claim is "facially plausible" when the complainant pleads facts that allow the court to "draw the reasonable inference that defendant is liable" for the alleged misconduct. *Id.* The court must accept all well pleaded facts as true and must draw all reasonable inferences in favor of the complainant. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 190, 196 (5th Cir. 2009). The court is not obliged to accept legal conclusions couched as factual allegations as being true. *Iqbal,* 556 U.S. at 678. *See also, Bell v. Associated Wholesale Grocers, Inc.,* 2019 WL 1979935 *1 (E.D. La. 2019).

### B. Plaintiff's Louisiana Wage Statute Claims are Preempted by FLSA

Plaintiff cannot state a claim under the Louisiana Wage Statute ("LWS"), LSA-R.S. 23:631, *et seq.,* because any such claims are preempted by Federal law, namely, the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, *et seq.* and plaintiff's claims under the LWS should be

dismissed under F.R.C.P. 12(b)(6). , the Court discussed the standards applicable to Rule 12(b)(6) motions.

In *Bell v. Associated Wholesale Grocers, Inc.,* 2019 WL 1979935 *1 (E.D. La. 2019, the plaintiff attempted to make claims under both the LWS and the FLSA for unpaid minimum wages, unpaid overtime and statutory penalties.  The LWS requires employers to pay employees who are terminated or resign the amount due at the time of termination or resignation under the terms of the employees' employment within certain time periods.[1]  Section 206 of the FLSA mandates that employers must pay a minimum wage to their employees *who are engaged in interstate commerce* in the performance of their employment duties and Section 207 establishes maximum work-week hours and requires employers to pay such employees time and a half for any hours worked exceeding the maximum established hours.

Here, Kingsbery has alleged that the Law Firm is engaged in interstate commerce and that she was engaged in interstate commerce as part of her job.  Accepting these allegations as true, as the Court is required to do in determining a Rule 12(b)(6) motion, it is clear that Kingsbery's claims fall within the FLSA.  It is well-established that a plaintiff cannot seek to recover allegedly unpaid minimum wages, unpaid overtime wages and penalties under both the FLSA and the LWS because the FLSA preempts such state law claims as to employees engaged in interstate commerce, as plaintiff here claims that she was.  "[L]egal entitlement claims like those seeking minimum

---

[1] *See* LSA-R.S. 23:631.

wages...are covered by FLSA and thus preempt Louisiana claims seeking allegedly unpaid minimum wages and penalties for the failure to pay them."[2]

Furthermore, the State of Louisiana does not have a minimum wage law. (*See State Minimum Wage Laws,* U.S. Dept. Of Labor, https://www.dol.gov/agencies/whd/minimum-wage/state Jan. 1, 2021). That being the case, all of Kingsbery's state law claims for minimum wages and overtime pay are preempted by the FSLA. Every one of the claims attempted to be stated by Kingsbery relate to the Law Firm's alleged failure to pay her the minimum wage and overtime pay. Thus, they are based on the FSLA.

Because Kingsbery's state law claims under the LWS are preempted by the FLSA, she has not and cannot state a claim for recovery under the LWS and those claims should be dismissed.

### C. Plaintiffs' Complaint is Impermissibly Vague

Moreover, Kingsbery's Complaint is vague to the point that Paddison nor the Law Firm cannot file a meaningful answer. Kingsbery lumps Paddison, individually, and the Law Firm together, when in fact, they are not the same. The Law Firm is a separate juridical entity. Kingsbery attempts to justify the lumping of the Law Firm and Paddison, individually, together by making the bald assertion that they are alter egos of one another. In the first place, Paddison, individually, would not be the alter ego of the Law Firm in any event. If there is an alter ego theory to be asserted, which

---

[2] *Bell, supra,* 2019 WL 1979935 at *1. *See also Whitworth v. Chiles Offshore Corp.,* 1992 WL 245618 at *1 (E.D. La. 1992)("[I]f the [LWS] were concerned with the payment of the sort of 'legal entitlement' wages sought by Plaintiffs, it would be preempted by the FLSA."); *Divine v. Levy,* 36 F. Supp. 55, 58 (W.D. La. 1940) ("The plaintiff has entered court under the Federal act, seeking for himself all of its advantages. Should he be benefitted additionally with whatever penalties the Louisiana statute may accord him? We answer in the negative."); *Little v. Mizell,* 2016 WL 3430489 at *4 ("Plaintiff cannot seek to recover unpaid overtime wages under both the FLSA and [LWS] because such state law claims are preempted by the FLSA if the employee was engaged in interstate commerce.");

is flatly denied, the Law Firm would be the alter ego of Paddison, not the other way around. The law firm is not, however, Paddison's alter ego and Kingsbery does not does not make a single allegation in support of this claim.

Kingsbery was *never* employed by Paddison individually but was employed and paid by the Law Firm. Following the outbreak of the COVID-19 pandemic, certain disputes arose between Kingsbery and the Law Firm regarding the conditions of her employment, which resulted in Kingsbery voluntarily leaving her position with the Law Firm and requesting to be furloughed so that she could take advantage of the COVID-19 stimulus package contained in the Coronavirus Aid, Relief and Economic Security ("CARES") Act. She was furloughed, as she so admits in her Complaint (¶s 27-28). In the forms submitted to the State of Louisiana in order to receive the enhanced unemployment benefits, Kingsbery represented that she was owed nothing in the way of past wages. Based upon that representation, Paddison, on behalf of the Law Firm, also represented to the State of Louisiana that Kingsbery was owed nothing as he believed that to be a true statement.. Kingsbery then received enhanced unemployment benefits retroactive to March 23, 2020, the last date on which she worked in Paddison's office. She should not be permitted to attempt "double dip" by making claims under the FLSA and LWS and also having received benefits under the CARES Act for all of the time that she was unemployed.

The simple truth is that, in light of the enhancements to the unemployment benefits provided under the CARES Act, Kingsbery could collect nearly as much in unemployment benefits as she would have been paid by the Law Firm.[3] She received some $900 per week in benefits for a period

---

[3] Kingsbery's W-2 for 2020 indicates that as of March 23, 2020, her last day of employment by the Law Firm, Kingsbery had already been paid $14,976.00. Extrapolating that out for 12 months, Kingsbery was in line to make nearly $60,000.00 for the 2020 tax year, not

of some six (6) months, retroactive to March 23, 2020. Kingsbery never made any attempt to return to her workplace or employment, but instead chose not to do anything, even though she was capable of obtaining employment as a paralegal. It was only when her COVID unemployment benefits ran out in July, 2020, that Kingsbery decided to seek other employment, which she quickly found. Apparently, becoming more disgruntled over the cessation of the $900 per week windfall that she had been receiving from the government, Kingsbery then filed the instant action on November 24, 2020, with no prior demand, no contact from her counsel and no acknowledgment that she had already been paid by the State of Louisiana and the United States government for the period from March 23, 2020 through the end of July 2020.

In any event, the allegations of Kingsbery's Complaint are all over the place. She claims that "defendants' record keeping and compensation practices created wilful failures and refusals to pay proper minimum wages and overtime compensation" to her.[4] In truth and in fact, however, Kingsbery herself was in charge of the Law Firm's payroll, the funding and payment of payroll taxex and wrote out the checks for her own compensation, as well as the checks for the payroll of the Law Firm's other employees. All that Paddison did was to sign the checks that Kingsbery placed before him. Thus, if there was any failure to pay Kingsbery what she was owed, that failure was hers alone and never complained of. Furthermore, Kingsbery was not being paid minimum wage, far above it, as she herself admits in her Complaint. As already stated, Kingsbery had been paid nearly $15,000.00 for less than 3 months' work by the time she left the Law Firm's employ on March 23,

---

including any bonuses she may have received.

[4] Complaint, ¶ 2.

2020. In 2018, her W-2 showed $54,816 in compensation and in 2019, her W-2 showed $54,840, exclusive of bonuses. She apparently gave herself a raise in 2020.

She claims that she was an hourly employee and that she was a salaried employee.[5] Which is it? Kingsbery states in her Complaint that she made $243.60 per day. (Complaint ¶s 35, 47). This comes to $1,218.00 per week or $4,872.00 per month. In fact, at the time Kingsbery left the Law Firm's employ, she had apparently been paying herself nearly $5,000 per month for 2021. Kingsbery's Complaint is devoid of any allegations that would allow this Court to conclude that her pay fluctuated based on the hours that she worked in a particular week. In addition to her salary, Kingsbery in fact received bonuses and paid vacations, which she took at will, and other benefits. Kingsbery was never held to a particular work schedule, but was given great latitude in this regard and, in fact, kept her own hours and issued her own paychecks. She was regularly paid whether she worked or not.

She claims that she "regularly worked overtime" hours for which she was not paid. She fails, however, to identify any particular week in which she worked overtime that she was not paid. Further, as stated, Kingsbery was in charge of the payroll and payroll taxes. Had she been entitled to any overtime pay, she would have been the one to pay herself for that overtime and to make sure that payroll taxes were paid on that overtime compensation. All she would have done is to write the check for the amount she claimed she was owed and put it before Paddison, who would have routinely just signed it on behalf of the Law Firm, with no questions being asked. Paddison trusted Kingsbery to be accurate in her bookkeeping and in maintaining proper accounting and payroll and the funding of the attendant payroll taxes.

---

[5] *See* Complaint, ¶s 20 and 35.

All that Kingsbery does in her Complaint is to make bald accusations that she was owed money for overtime "routinely" worked and uncompensated and that Paddison and/or the Law Firm "knew" that she was owed monies for unpaid overtime. Yet, her Complaint contains no specifics relative to any amounts that she claims were owed to her for alleged overtime nor was Paddison or the Law Firm placed on notice at any time prior to the filing of this Complaint that Kingsbery had any claim for any unpaid overtime whatsoever. Kingsbery also appears to claim unpaid overtime wages dating back to 2017, although this is not at all clear from the allegations of her Complaint. She does not say when in 2017, 2018, 2019 or 2020 she is claiming that she was not paid overtime. Furthermore, as stated, if she was owed overtime, it was totally within her own purview to have included the amounts she claimed she was owed in her checks that she herself wrote out and presented to Paddison for his signature on behalf of the Law Firm.

In truth and in fact, Kingsbery was a exempt employee who was not due any overtime. When Kingsbery came to work for the Law Firm, she informed Paddison, on behalf of the Law Firm, that she would need to make at least $50,000 per year, not $X per hour. $50,000 per year was the minimum she was guaranteed to make in any given year. She at all times during her employ with the firm made at least that amount, and usually made more than that amount.

In sum, the allegations of Kingsbery's Complaint are vague to the point that Paddison and/or the Law Firm are unable to tell exactly what she is claiming and against whom. Accordingly, her Complaint should be dismissed under Rule 12(b)(6).

    **D.**    **Plaintiff is an Exempt Employee for Purposes of FSLA**

In her Complaint, Kingsbery describes her job duties as acting as a paralegal who worked in the Law Firm's interstate law practice, managing real estate properties, engaging in interstate

correspondence and communications, issuing interstate subpoenas and regularly conducting business with interstate clients. (*Id.* ¶ 4). She also claims that she attended to Paddison's personal and (presumably, although this is not clear from the wording of her Complaint) the Law Firm's general legal and business affairs. (*Id.* ¶ 12). Kingsbery also states that she did the Law Firm's billing and had access to its bank accounts, including its escrow and operating accounts, until she was "locked out" of the Law Firm's bank accounts on or about April 1, 2020 and, indeed, that she processed her own paychecks (which she regularly did the entire time of her employment with the Law Firm) and also processed checks to all other employees of the Law Firm. (*Id.* ¶ 18, 21).

   Accepting Kingsbery's allegations as true for purposes of this 12(b)(6) motion, it is more than clear from her own Complaint that Kingsbery was not simply an hourly employee. She was a salaried employee who served in a purely administrative capacity and had a great deal of responsibility and personal autonomy. Furthermore, Kingsbery has not alleged any facts that indicate that the Law Firm's practices and record keeping showed disregard for any law or was illegal in any fashion and even if she had, she was the one keeping the records and attending to the payroll, not Paddison, individually, and not anyone but Kingsbery on behalf of the Law Firm. Kingsbery never complained about her salary, which far exceeded minimum wage standards contemplated in the FLSA.

   As a purely administrative, salaried employee, working as a professional paralegal and administrative assistant, Kingsbery is exempt from the overtime compensation provisions of the FLSA. The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per regular workweek. 29 U.S.C. § 207. Employees who work in bona fide "executive," "administrative" or "professional" positions are exempt from the overtime

requirements. 29 U.S.C. § 213(a)(1). 29 C.F.R. 541.0 *et seq.,* sets out a "short test" for determining whether an employee is an administrative employee. Pursuant to 29 C.F.R. 541.200, an employee is an administrative employee exempt from the overtime requirements if: (1) she is compensated on a salary or fee basis of at least $684.00 per week; (2) she performs primarily office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; and, (3) her primary duties the exercise of discretion and independent judgment with respect to matters of significance. By her own allegations as set forth in her Complaint, Kingsbery's compensation far exceeded the $684.00 per week threshold, she performed office or nonmanual work directly related to the management and general business operations of the Law Firm and she exercised great discretion and independent judgment with respect to matters of significance. Thus, Kingsbery meets the regulatory test for an exempt administrative employee.

She also qualifies as an exempt professional employee under 29 C.F.R. 541.300 because (1) she was compensated on a salary or fee basis at a rate exceeding $684.00 per week; and (2) a large part of her primary duties included work requiring knowledge of an advanced type in a field of science or learning customarily acquired by prolonged course of specialized intellectual instruction, *i.e.,* paralegal. Thus, Kingsbery is except from the overtime requirements under the short-tests for both administrative and professional employees by the allegations of her own Complaint. Accordingly, Kingsbery's claims under the FLSA for unpaid minimum wages and unpaid overtime should be dismissed under Rule 12(b)\(6) for failure to state a claim.[6]

---

[6] *See Jones v. New Orleans Regional Physician Hospital Organization, Incorporated, d/b/a People's Health Network,* 2020 WL 7074225 (5th Cir. Dec. 3, 2020) (salaried, white-collar employees, working in specialized fields were exempt administrative employees).

E.      **Plaintiff's Overtime Claims are Partially or Totally Time-Barred.**

Moreover, as stated above, Kingsbery has not alleged any facts supporting her bald allegation that Paddison, individually, or the Law Firm, engaged in any wilful failure to pay her any amounts that she claims is due. Indeed, as stated above, Kingsbery herself was in charge of billing clients and paying creating her own paychecks and transferring payroll taxes. It is impossible to ascertain from the vague allegations of Kingsbery's Complaint any dates on which she claims to have worked and was owed overtime that was allegedly not paid and she never made any complaint to Paddison or anyone else that any overtime compensation was due to her until the filing of the instant Complaint. Any such claims that are attempted to be asserted by Kingsbery that are more than two (2) years old are barred by the two-year statute of limitations under the FLSA set forth in 29 U.S.C. § 255.[7] Should this Court find that Kingsbery's Complaint should not be dismissed as to all claims asserted under the FLSA, which is denied, then, each of her claims that is asserted in her Complaint that allegedly accrued prior to two years of filing the Complaint should be dismissed pursuant to Rule 12(b)(6).

## **CONCLUSION**

The simple truth is that early on in the COVID-19 pandemic, no one knew what to expect. No one knew whether they would have a job going forward. In the case of Paddison and the Law Firm, they did not know whether a law practice would be able to be sustained for the long or short term. It is safe to say that businesses all over the country, including law firms, were furloughing their employees because they did not know whether they would be able to pay them in light of the pandemic lock-down. For her part, Kingsbery was able to take advantage of the enhanced unemployment provisions of the CARES Act and to maintain her income at or near the level that she

---

[7] *See Johnson v. Home Team Productions,* 2004 WL 1586552 (E.D. La. 2004).

had been paid prior to the pandemic. Yet, she now seeks to harass Paddison and the Law Firm by making public claims that she was owed unnamed amounts of minimum wages and overtime, when she never was a minimum wage employee, nor entitled to any overtime compensation.  Instead, Kingsbery was a well-paid administrative assistant and professional paralegal.

For all of the reasons stated above, plaintiff's claims under the Louisiana Wage Statute are preempted by the Federal Labor Standards Act.  Further, Kingsbery's Complaint is impermissibly vague and should be dismissed for that reason.  Moreover, plaintiff, as an administrative and professional employee falling within 29 C.F.R. 541.200 and 541.300, is an exempt employee under the FSLA.  Finally, even if plaintiff is not exempt under 29 C.F.R. 541.200 and 541.300, any claims that may have accrued more than two years prior to the filing of the complaint are time-barred.  Accordingly, the Complaint should be dismissed in its entirety, pursuant to FRCP 12(b)(6).

                      Respectfully submitted,

                      *s/Ralph S. Whalen, Jr.*

                      _____
                      RALPH S. WHALEN, JR. (La. Bar #08319)
                      1100 Poydras Street, #2950
                      New Orleans, LA 70163
                      Telephone: (504) 525-1600
                      Facsimile:  (504) 525-1606
                      *Attorney for Defendants, David R. Paddison*
                      *and David R. Paddison, Attorney-at-Law, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Memorandum in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), has been filed electronically. Notice of this filing will be sent to the parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's system.

New Orleans, Louisiana, this 14th day of April, 2021.

*s/Ralph S. Whalen, Jr.*
_____
RALPH S. WHALEN, JR.