UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARJORIE E. KINGSBERY                          CIVIL ACTION

v.                                             NO. 20-3192

DAVID PADDISON,                                SECTION "F"
ATTORNEY-AT-LAW LLC, ET AL.


ORDER AND REASONS

     Before the Court is the defendants' motion to dismiss.  For
the reasons that follow, the defendants' motion is GRANTED in part
and DENIED in part.

**Background**

     This lawsuit arises from a paralegal or administrative
assistant's allegations that her former employer failed to pay her
overtime, wages earned, and vacation days accrued before she
stopped working for the law office over a disagreement regarding
whether she could work from home during the pandemic.

     The allegations of the complaint are taken as true.  Marjorie
Kingsbery worked for nine years as an "hourly employee" for David
Paddison at David Paddison's law office, David R. Paddison,

Attorney-at-Law, LLC.[1]  Ms. Kingsbery was a "qualified paralegal" who "attend[ed] to both [Paddison's] legal and general business affairs" and whose regular duties included "telecommunications and correspondence" for Mr. Paddison's law office, as well as "managing real estate properties in Louisiana and Idaho," conducting "interstate credit card transactions," issuing "interstate subpoenas," and "conduct[ing] business with interstate clients."

From November 2017 until her "termination," Ms. Kingsbery worked an average of seven overtime hours per week.  When the COVID-19 pandemic began, Ms. Kingsbery and Mr. Paddison had some vague communications concerning whether Ms. Kingsbery would be permitted to work from home.  After the Governor's stay-at-home order issued, Ms. Kingsbery went to the office to gather documents that would enable her to work from home.  Ms. Kingsbery was concerned about the virus and about the fact that Mr. Paddison went into the office and allowed clients and deliveries at the office.

Mr. Paddison called and told her that she "need[ed] to file for unemployment."  When Mr. Paddison arrived at the office on March 23, 2020, Ms. Kingsbery then told Mr. Paddison that she was

---

[1] Ms. Kingsbery alleges that she was an "hourly employee."  In another paragraph of the complaint, Ms. Kingsbery indicates that she may have received a weekly "salary." In still another paragraph of the complaint, she also alleges that her "daily rate of pay" was $243.60/day.

terrified of the virus and wanted to work from home.  Mr. Paddison "appeared to dislike the idea" then said he had to leave.  Not knowing when he would be back, Ms. Kingsbery left the office, taking work with her.  He later contacted her saying that he had not known that she was leaving; she said she was worried she would not get paid.  He said that he "never said that."  Mr. Paddison explained that Ms. Kingsbery needed to communicate.  But the miscommunication continued.

On March 30, 2020, Mr. Paddison texted Ms. Kingsbery to find out whether she was returning to the office and to discuss the future.  Ms. Kingsbery replied "yes" and that she would call him that afternoon.  The next day, Ms. Kingsbery attempted to work from her house, but Mr. Paddison "had locked her out of all Resource Bank accounts."  Ms. Kingsbery texted Mr. Paddison that she was not able to do the billing because she needed to reconcile the escrow and operating accounts.  He told her to do the billing "and he will pay her normal salary for the week."

Over the next few days, Ms. Kingsbery alleges that she worked from home and that Mr. Paddison continued to question her.  On April 1, 2020, Mr. Paddison told Ms. Kingsbery that he was disappointed that she did not do the billing and that it seemed as if she and another employee had quit; this allegedly perplexed Ms. Kingsbery because she had spoken with Mr. Paddison the day before.

Two days later, Ms. Kingsbery completed the billing, which took her 10 hours, then she texted Mr. Paddison that she had "billed out $32,776.00." On April 5, 2020, Ms. Kingsbery processed her check for the week and left it on Mr. Paddison's chair to await his signature.

The next day, Mr. Paddison texted Ms. Kingsbery several times asking if she was going into the office because he needed assistance. But Ms. Kingsbery had taken a muscle relaxer, which "knocked [her] out," so she did not see the text until later that evening. Ms. Kingsbery apologized to Mr. Paddison, who advised that he needed a bill of sale for a car and he stated that he would call her the following day.

On April 7, 2020, Ms. Kingsbery called the office as instructed; when she asked about her check, "[t]here was no response[.]" The next day, Ms. Kingsbery texted Mr. Paddison stating that she needed her check. He said he would call her soon. Ms. Kingsbery then emailed Mr. Paddison "after he had sent an ugly text message to [another employee] and had not paid them."

Communication continued to deteriorate. On April 9, 2020, Mr. Paddison emailed Ms. Kingsbery, stating that he would pay her for her time, asking that she provide the hours worked, and noting "I cannot pay you and hire others to do your job and fill in." Mr. Paddison told Ms. Kingsbery not to come into the office. The

4

next day, Ms. Kingsbery emailed Mr. Paddison offering him a summary of "events that ... transpired since March 22, 2020." Two days later on April 12, 2020, Mr. Paddison responded that he was treating Ms. Kingsbery as a furloughed employee because she had refused to communicate for two weeks. The next day, Mr. Paddison emailed Ms. Kingsbery asking if she was owed anything because he needed to complete "layoff forms."

On April 14, 2020, Ms. Kingsbery texted Mr. Paddison that he owed her for the 10 hours of billing work; she stated that her husband was going to return to the law office all files she had taken home. Mr. Paddison responded that all files should be left at the door with a list of what she had done for the 10 hours and what she had taken from the office. Ms. Kingsbery replied that the 10 hours was for the March billing.

Almost three months later, on July 9, 2020, Ms. Kingsbery still had not received payment for the 10 hours "plus 2 vacation days." Mr. Paddison did not respond to her email inquiry. On July 30, 2020, Ms. Kingsbery sent a request, by certified mail, for her final paycheck and seeking payment for accumulated overtime; the mail was signed for on August 5, 2020. A week later, a certified letter (for which no one signed) was left in Ms. Kingsbery's mailbox; Mr. Paddison wrote that he disputed the

entirety of her letter and that he was investigating records missing from the office.

Ms. Kingsbery sued David Paddison and his law office, David Paddison, Attorney-at-Law LLC, alleging that (i) the defendants failed to compensate her for regularly working overtime and failed to pay her at all for hours worked in April 2020, in violation of the Fair Labor Standards Act; and (ii) the defendants' failure and refusal to pay her unpaid wages, benefits, penalty wages, and attorney's fees violated the Louisiana Wage statute.[2]   The defendants moved to dismiss for insufficient service of process and for failure to state a claim.   Addressing only insufficient service of process, the Court granted the motion to dismiss without prejudice to the plaintiff's ability to correct the service deficiencies, which her counsel has since done. The Court reinstated the case and the original complaint once service was properly effected.   Now the defendants renew their motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state

---

[2] "At the time of her termination," Ms. Kingsbery alleges, she "was owed gross wages of $9,888.00."   At the time she filed this lawsuit, Ms. Kingsbery alleges that she is owed $21,924.00 in penalty wages.

a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014)(citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603

(5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as

other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56. See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004); see also Fed. R. Civ. P. 12(d).

II.

First, the defendants move to dismiss the plaintiff's claim under the Fair Labor Standards Act on the grounds that she fails to state a plausible claim, any such claim is time-barred, and Kingsbery qualified as either an "administrative" or an "professional" employee under the federal regulations and is thus exempt from the FLSA's overtime pay requirements. Second, the defendants move to dismiss the plaintiff's claim under the Louisiana Wage Payment Act on the ground that the claim is preempted by the Fair Labor Standards Act. Most of the defendants' arguments are premature; nevertheless, the Court considers in turn each ground advanced for dismissal.

*A.*

The Fair Labor Standards Act sets a minimum wage and mandates that employers pay their hourly employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); Johnson v. Heckmann Water Res. (CVR), Inc., 758 F.3d 627, 630 (5th Cir. 2014)(citations omitted); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 572 (E.D. La. 2008). Section 216(b) provides hourly employees wrongly denied overtime wages a cause of action against an employer to recover those unpaid overtime wages, liquidated damages, and attorney's fees from their employees.

To state a claim to recover unpaid overtime wages, the Fifth Circuit recently reiterated, "a plaintiff must plausibly allege: (1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due." White v. U.S. Corrections, L.L.C., --- F.3d ---, 2021 WL 1732132, at *5 (5th Cir. May 3, 2021).

Kingsbery's allegations meet these requirements. First, she alleges that she worked for the defendant law office for nine years and that, she regularly worked an average of seven overtime hours per week since November 2017. Second, she alleges that she engaged

10

in interstate activities covered by the FLSA, such as managing real estate properties from Louisiana to Idaho, issuing interstate subpoenas, and conducting business with interstate clients in Paddison's interstate law practice. Finally, several times in her complaint, she alleges that she was paid on an hourly basis and that the defendants have failed to pay her for an average of seven hours of overtime for each week for the past three years.[3] Although the plaintiff fails to plead the precise amount of unpaid overtime wages, at this stage of the litigation her allegations suffice. See Molina-Aranda v. Black Magic Enterprises, L.L.C., 983 F.3d 779, 788 (5th Cir. 2020)(finding that these allegations were sufficient at the pleading stage to put the defendants on notice of the minimum and overtime wage claims: for "'several pay periods

---

[3] The plaintiff alleges:
- "[d]uring the period November 2017 through the date of her termination Plaintiff was an hourly employee of defendant who regularly worked an average of seven overtime hours per week for Defendant[.]"
- "At all relevant times, Plaintiff was compensated at an hourly rate" and "Plaintiff regularly worked time in excess 40 hours in a workweek for which she was not compensated[.]"
- Paddison specifically requested that she account for her "hours" so that she could be paid for her time.
- Kingsbery contacted Paddison seeking payment for the 10 hours for which she had not been paid plus two vacation days and that she sent a certified mail request for her final paycheck "and payment for her accumulated overtime[.]"

Taking her allegations as true, Kingsbery has plausibly pled a prima facie claim for relief under the FLSA.

during late August and September of 2015,' they 'worked 50 to 80 or more hours a week' but 'were not paid fully or paid at all.'").

Mr. Paddison and his law office do not so much challenge the sufficiency of Ms. Kingsbery's FLSA allegations as they invoke two exemptions, which, if applicable, would render Kingsbery exempt from the FLSA's overtime-pay remedy; they claim that Kingsbery was a salaried employee working as a professional paralegal and administrative assistant and, thus, is exempt from the FLSA's overtime-pay requirement because she meets the regulatory tests for both the administrative employee and professional employee exemptions.  To be sure, some of Kingsbery's factual allegations conflict with her hourly-employee allegations.  Nevertheless, at this stage of the proceedings, the Court will not parse the internally inconsistent factual allegations to find facts in favor of the defendants.[4]   By invoking the administrative and

---

[4] The defendants invoke <u>Jones v. New Orleans Regional Physician Hospital Organization, Incorporated</u>, 981 F.3d 428 (5th Cir. 2020). There, the Fifth Circuit affirmed Judge Zainey's grant of summary judgment for the defendant finding that there was ample support in the record that the plaintiffs were compensated on a salary basis and that the employees working in specialized fields were exempt administrative employees.  The procedural posture of <u>Jones</u>'s outcome reinforces this Court's determination that resolution of the defendants' affirmative defenses must await summary judgment; these are not findings the Court can make on a motion to dismiss under Rule 12(b)(6).  That the plaintiff makes internally inconsistent allegations concerning whether she was paid hourly or whether she was a salaried paralegal and administrative assistant is no impediment to proceeding to discovery on her claim as alleged.

professional employee exemptions, the defendants advance affirmative defenses to Kingsbery's claims. Fact-based assertions that go to the merits of a plaintiff's claims are reserved for summary judgment: "the 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact' typically better suited for summary judgment." White, --- F.3d ---, 2021 WL 1732132, at *6 (citation omitted).

Offering another, ground for *partial* dismissal of the plaintiff's FLSA claims, the defendants contend that any such claim that is more than two years old is barred by the FLSA's two-year statute of limitations. Insofar as Kingsbery seeks to recover for time-barred overtime pay, the Court agrees.

The FLSA imposes a two-year statute of limitations on claims for unpaid overtime compensation or unpaid minimum wages; this limitations period is extended to three years for willful violations. Parrish v. Premier Directional Drilling, L.P., 917 F3d 369, 379 (5th Cir. 2019)(citing Steele v. Leasing Enters., Ltd., 826 F.3d 237, 248 (5th Cir. 2016)(citing 29 U.S.C. § 255(a))). Insofar as Kingsbery attempts to recover for willful failure to pay overtime wages owed more than three years before November 2020 when her complaint was filed, any such claims are time-barred. Insofar as she attempts to recover for failure to pay overtime wages due two years before November 2020, when the

13

complaint was filed, any such claim is likewise time-barred.  The plaintiff's recovery for overtime shall be limited accordingly.[5]

*B.*

In addition to her claim seeking FLSA overtime wages, Kingsbery alleges that she is entitled to recover actual unpaid wages, including unpaid vacation, under the Louisiana Wage Payment Act, La.R.S. 23:631.  The defendants contend that the state law claims must be dismissed as preempted by the FLSA.  Given the distinction between the FLSA overtime claim and the state law claims for unpaid wages and vacation time, the Court disagrees.

The Louisiana Wage Payment Act obliges an employer promptly to pay an employee earned wages due upon the employee's discharge or resignation.  See La.R.S. 23:631; see also Newton v. St. Tammany Fire District No. 12, --- So.3d ---, 2021 WL 650155, 20-0797 (La.App. 1 Cir. 2/19/21)("The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after [her] dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers.").  Vacation pay is considered an amount then due in accordance with the employer's vacation policy if the

---

[5] According to the allegations in her complaint, the time period within which she seeks to recover for unpaid overtime dates back to November 2017.

14

employee is eligible, has accrued vacation time with pay and the employee has not been compensated or taken the vacation time as of the date the employment terminates.  Id. at 23:631(D)(1).  The LWPA punishes employers who fail to promptly pay their former employees; in addition to penalty wages, the LWPA provides for an award of reasonable attorney fees, provided that certain conditions are met.  Bergeron v. Ochsner Health System, No. 17-519, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017)(citation omitted).

"Unlike the FLSA[,] the Louisiana statute at issue, the LWPA, does not establish a minimum wage or overtime protection."  See Bennett v. McDermott International, Incorporated, --- Fed.Appx. ---, 2021 WL 1533646 (5th Cir. April 16, 2021)(unpublished, per curiam).  The LWPA "provides that contracted-for wages -- 'the amount then due under the terms of employment' -- must be paid to an employee within a certain time frame after termination or resignation."  Id. at *3 (citing La.R.S. 23:631(A)(1)(a)).  "To prove 'terms of employment,' a plaintiff need not show a written agreement existed; a 'normal procedure' or 'internal policy' will suffice."  Id. at *5 (citation omitted).

"To state a claim for unpaid wages under the LWPA, an employee must allege [1] that [the defendant] was her employer, [2] that the employee/employer relationship ceased to exist, [3] that at

15

the time that the employee/employer relationship ended she was owed wages, and [4] that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days." Bergeron v. Ochsner Health System, No. 17-519, 2017 WL 3648451, at *2 (E.D. La. Aug. 24, 2017)(citation omitted).

The plaintiff has stated a claim for unpaid wages and accrued vacation under the LWPA. Kingsbery alleges that she was employed by the defendants, her employment was terminated, at the time the employment relationship ended, she was owed wages and accrued vacation, and that the defendants have failed to pay the wages and accrued vacation despite demand. The defendants contend that the LWPA claim is preempted by the FLSA. If the plaintiff's LWPA claim sought to recover overtime wages like her FLSA claim, the Court would agree. See Trigueros v. New Orleans City, No. 17-10960, 2018 WL 2336321, at *2 (E.D. La. May 23, 2018)("Plaintiff cannot recover unpaid overtime wages under both the FLSA and LWPA because the state law claims are preempted if the employee was engaged in interstate commerce."). As an employee engaged in interstate commerce, Kingsbery's right to overtime wages is governed exclusively by the FLSA. However, here, the plaintiff alleges that she seeks to recover not just for the overtime wages which are the object of her FLSA claim, but, rather, additionally and distinctly for an agreed-upon earned wage for regular (not overtime) hours worked prior to her termination, plus two vacation

days.   Insofar  as  the  plaintiff  seeks  to  recover  for  unpaid
overtime  under  the  FLSA  and  --  distinct  from  her  federal  overtime
claim  --  for  unpaid  wages  and  accrued  vacation  under  the  LWPA,  the
Court  finds  that  the  LWPA  claim,  so  limited,  is  not  preempted.
See,  e.g.,  Hampton v. McDermott International, Inc.,  No.  19-200,
2019  WL  5617025,  at  *3  (W.D.  La.  Oct.  30,  2019)(collecting  cases
addressing  preemption  and  finding  that  the  plaintiff's  allegations
that  they  never  worked  less  than  40  hours  each  week  triggered  the
FLSA's  overtime  provision);  see also  Bell v. Associated Wholesale
Grocers, Inc.,  No.  19-131,  2019  WL  1979935,  at  *1  (E.D.  La.  May  3,
2019)(finding  that  the  plaintiffs'  claims  for  unpaid  overtime,
unpaid  minimum  wages,  and  any  statutory  penalties  associated  with
the  non-payment  of  those  are  preempted  by  the  FLSA,  but  finding
that  "[t]o  the  extent  that  Plaintiffs  seek  other  'unpaid  wages'
under  the  Louisiana  Wage  Statute,  Defendant  has  not  moved  to
dismiss  those  claims[,  which]  remain.");  England v. Adm'rs of the
Tulane Educ. Fund,  No.  16-3184,  2016  6520146  (E.D.  La.  Nov.  3,
2016)(LWPA  claim  for  unused  vacation,  paid  time  off,  sick  days,
and  paid  holidays  was  not  preempted);  Bergeron v. Ochsner Health
Sys.,  No.  17-519,  2017  WL  3648451  (E.D.  La.  Aug.  24,  2017)(noting
that  the  plaintiff's  LWPA  claim  was  limited  to  recover  unpaid
hourly  wages  involving  workweeks  that  did  not  exceed  40  hours).

Accordingly,  for  the  foregoing  reasons,  IT  IS  ORDERED  that
the  defendants'  motion  to  dismiss  is  GRANTED  in  part  (insofar  as

any FLSA overtime claim, which accrued more than two years ... or, if defendants' conduct was willful, three years ... from the filing of the complaint, is prescribed) and DENIED in part (insofar as the plaintiff has pled facts sufficient to state a plausible FLSA unpaid overtime claim and a plausible LWPA claim for unpaid wages and accrued vacation time).

New Orleans, Louisiana, May 12, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE