UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARJORIE E. KINGSBERY                                    CIVIL ACTION

v.                                                       NO. 20-3192

DAVID PADDISON,                                          SECTION "F"
ATTORNEY-AT-LAW LLC, ET AL.

ORDER AND REASONS

Before the Court is the plaintiff's motion for partial summary judgment.  For the reasons that follow, the motion is DENIED.

**Background**

This lawsuit arises from a paralegal and law office manager's allegations that her former employer failed to pay her overtime, wages earned, and vacation days accrued before she stopped working for the law office over a disagreement or miscommunication regarding whether she would be permitted to work from home during the COVID-19 pandemic.

Few background facts are undisputed.[1]  Marjorie Kingsbery worked for nine years at David Paddison's law office, David R.

---

[1] The Court assumes familiarity with prior proceedings and incorporates its May 12, 2021 Order and Reasons, which summarized

1

Paddison, Attorney-at-Law, LLC. Her precise title is disputed,[2] as are the timing and circumstances of her departure from employment, as well as whether she was an hourly or salaried employee.[3] Kingsbery was employed by the law office until March 23, 2020 (says Padidson, when Kingsbery abruptly left the office after she received her paycheck for wages owed through March 23, 2020) or sometime in April 2020 (says Kingsbery, after completing

---

the facts as alleged in the complaint. Now certain facts are of record. And many are disputed.

[2] According to the allegations of the complaint, which Kingsbery now verifies in a sworn declaration under penalty of perjury, Ms. Kingsbery was a "qualified paralegal" who "attend[ed] to both [Paddison's] legal and general business affairs" and whose regular duties included "telecommunications and correspondence" for Mr. Paddison's law office, as well as "managing real estate properties in Louisiana and Idaho," conducting "interstate credit card transactions," issuing "interstate subpoenas," and "conduct[ing] business with interstate clients." According to Paddison's sworn declaration, Kingsbery had numerous job responsibilities, including managing the office, keeping its books, paralegal and legal assistant to Paddison, drafting pleadings, scheduling hearings, establishing timelines and keeping track of deadlines, and otherwise ran day to day operations of the law office. Kingsbery also had complete control and discretion over payroll, including how she was paid.

[3] In her complaint, which Kingsbery verifies in a sworn declaration under penalty of perjury, Kingsbery alleges that she was an "hourly employee." In another paragraph of the complaint, Kingsbery indicates that she may have received a weekly "salary." In still another paragraph of the complaint, she also alleges that her "daily rate of pay" was $243.60/day. In his own sworn declaration, Paddison states that Kingsbery was a salaried employee; in fact, she demanded and he agreed that the law firm would pay her at least $50,000 per year. Paddison also submits that she was periodically given additional compensation in the form of profit-sharing. Paddison states that Kingsbery was responsible for the payroll and she was permitted to use whatever method she chose to get to her $50,000 per year salary. According to Paddison, Kingsbery kept her own hours, coming and going as she chose.

2

10 hours' worth of billing work from home). Anxieties running high as Louisiana shut down at the beginning of the COVID-19 pandemic, Paddison believed Kingsbery wanted to quit and Kingsbery believed she was going to (or should be permitted to) continue to work for the law office, from her house. Amid the uncertainty, anxieties escalated and miscommunication continued, mostly by text messages or emails between Kingsbery and Paddison.

Paddison and Kingsbery's relationship soured and continued to deteriorate. Paddison locked Kingsbery out of the bank accounts after her abrupt departure on March 23, 2020. On March 31, 2020, Kingsbery told Paddison that she would need access restored to complete the billing; billing that Padidson says should have been completed prior to her departure on March 23, 2020. On April 3, 2020, Kingsbery stated that the billing had been done, but Paddison wonders in his sworn statement "how she had managed to do any billing [i]s a mystery, since she did not come physically into the office to do it and, to Paddison's knowledge, did not have access to any files or information with which to do it, as by March 31, 2020, the passwords on Kingsbery's ... computer[] had been changed."

Paddison paid Kingsbery on March 23, 2020 for work completed through that day; the same day she abruptly departed the law office. On April 14, 2020, Kingsbery twice emailed Paddison,

requesting payment for unpaid wages (the 10 hours she spent on billing work after March 23, 2020) and vacation days. Kingsbery points to emails from Paddison in support of her contention that these hours are undisputed.[4] Months later, Kingsbery sent Paddison a certified letter seeking unpaid wages and vacation time.[5] Paddison responded by stating that he disputed that she was owed additional wages and that she failed to produce any corroborating evidence that she had worked any hours after her departure at 10:00 a.m. on March 23, 2020.[6] Kingsbery has never offered any back-up

---

[4] In the context of lengthy emails offered by Kingsbery, Paddison wrote in response to Kingbsery's April 8, 2020 email: "I will certainly pay you for your time, just give me your hours" and "[p]lease send hours worked as I cannot pay you and hire others to do your job and fill in." He also indicated that he did not fire her; rather, in his interpretation and characterization, Kingsbery quit. Paddison also states in the email that, after Kingsbery received her paycheck on March 23, 2020, "[y]ou just left and have remained quarantined, but not working at all. You did the billing, which I thought had been accomplished, but I will certainly pay you for your time, just give me your hours." Paddison is now skeptical that she could have accomplished any billing work at this time because she did not have any access to files or information to support completion of the task especially considering that the passwords on the computer had been changed along with the locks to the office.

[5] Meanwhile, Kingsbery applied for enhanced unemployment benefits under the CARES Act; in mid-April 2020, the law firm was requested to and did execute a furlough request so that Kingsbery could collect the unemployment benefits. Paddison submits that Kingsbery received at least $900 per week in unemployment benefits enhanced by the CARES Act package, retroactive to March 23, 2020, until the CARES Act enhancements to state unemployment expired.

[6] Suffice to say the parties dispute the circumstances of Kingbery's departure; whether she was paid hourly or whether she was salaried; whether the law office had a policy of paying its employees while on vacation; whether Kingsbery worked "overtime;"

or corroboration for the hours she says she worked after March 23, 2020. As for the request that she be paid for vacation days she had accrued but not used, the law firm has a policy in which it does not pay employees for vacation time, a policy Paddison submits Kingsbery knew well.

A few months after Paddison failed to comply with Kingsbery's certified demand letter, Kingsbery sued David Paddison and his law office, David Paddison, Attorney-at-Law LLC, alleging that (i) the defendants failed to compensate her for regularly working overtime and failed to pay her at all for hours worked in April 2020, in violation of the Fair Labor Standards Act; and (ii) the defendants' failure and refusal to pay her unpaid wages, benefits, penalty wages, and attorney's fees violated the Louisiana Wage Payment Act.[7] The defendants initially moved to dismiss for insufficient service of process and for failure to state a claim. Addressing only insufficient service of process, on February 22, 2021, the Court granted the motion to dismiss without prejudice to the plaintiff's ability to correct the service deficiencies, which her

---

whether Kingsbery worked 10 hours after she left the office on March 23, 2020.

[7] "At the time of her termination," Ms. Kingsbery alleges, she "was owed gross wages of $9,888.00." At the time she filed this lawsuit, Ms. Kingsbery alleges that she is owed $21,924.00 in penalty wages.

5

counsel has since done. The Court reinstated the case and the original complaint once service was properly effected.[8]

The defendants then moved to dismiss the complaint under Rule 12(b)(6). On May 12, 2021, the Court granted in part and denied in part the motion. The motion was granted as to any *prescribed* Fair Labor Standards Act claims; the motion was denied as to any timely FLSA unpaid overtime claim and as to any Louisiana Wage Payment Act claim for unpaid wages and accrued vacation time.

The plaintiff now seeks partial summary judgment on her state-law claims for overdue wages, unpaid vacation time, as well as penalty wages and attorney's fees.[9] She does not presently seek summary relief on her FLSA claim. Discovery has yet to be exchanged.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is

---

[8] When the plaintiff requested that the Court set aside its February 22 Order and Reasons dismissing without prejudice her claims, the Court construed the motion as a request to restore the case to the active docket and granted the request.

[9] Kingsbery suggests that the Court should conduct an evidentiary hearing and then order the defendants to pay $17,904 in unpaid wages and penalty wages and additionally award legal interest and reasonable attorney's fees taxed as costs, after additional briefing.

genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017)(citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003); Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). The non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib.,

7

Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

## II.

Kingsbery submits that summary relief is appropriate on her claims to recover actual unpaid wages, including unpaid vacation, under the Louisiana Wage Payment Act, La.R.S. § 23:631; she also seeks to recover penalty wages and attorney's fees, which she contemplates proving upon contradictory motion.  The defendants counter that the plaintiff has not carried her burden of demonstrating that there are no genuine disputes of material fact or that she is entitled to judgment as a matter of law on her

Louisiana Wage Payment Act claims. In other words, fact issues preclude summary judgment. The Court agrees.

The Louisiana Wage Payment Act[10] obliges an employer promptly to pay an employee earned wages due upon the employee's discharge or resignation. See La.R.S. § 23:631; see also Newton v. St. Tammany Fire District No. 12, 20-0797 (La.App. 1 Cir. 2/19/21), 318 So.3d 206, 211 ("The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after [her] dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers.").[11] Vacation pay is considered an amount then due in accordance with the employer's vacation policy if the employee is eligible, has accrued vacation time with pay and the employee has not been compensated or taken the vacation time as of the date the employment terminates. See § 23:631(D)(1). The LWPA punishes employers who fail to promptly pay their former employees

---

[10] La.R.S. § 23:631, et seq., is also known as the Louisiana "Last Paycheck Law."

[11] The LWPA "provides that contracted-for wages -- 'the amount then due under the terms of employment' -- must be paid to an employee within a certain time frame after termination or resignation." See Bennett v. McDermott International, Incorporated, --- Fed.Appx. ---, 2021 WL 1533646, at *3 (5th Cir. April 16, 2021)(unpublished, per curiam, citation omitted)("Unlike the FLSA[,] the Louisiana statute at issue, the LWPA, does not establish a minimum wage or overtime protection."). "To prove 'terms of employment,' a plaintiff need not show a written agreement existed; a 'normal procedure' or 'internal policy' will suffice." Id. at *5 (citation omitted).

whatever amount is indisputably due; in addition to penalty wages, the LWPA provides for an award of reasonable attorney fees, provided that certain conditions are met. Bergeron v. Ochsner Health System, No. 17-519, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017)(citation omitted).

To recover on a claim for unpaid wages under the LWPA, an employee must show "[1] that [the defendant] was her employer, [2] that the employee/employer relationship ceased to exist, [3] that at the time that the employee/employer relationship ended she was owed wages, and [4] that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days." See Bergeron v. Ochsner Health System, No. 17-519, 2017 WL 3648451, at *2 (E.D. La. Aug. 24, 2017)(citation omitted).  To recover penalty wages, the plaintiff must establish three things: (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand. See Rodriguez v. Green, 2012-0098 (La. App. 4 Cir. 06/20/12), 111 So. 3d 1, 5 (citations omitted).

Clear factual disputes preclude summary judgment on the plaintiff's LWPA unpaid wage, unpaid vacation, and penalty wage claims.  Critically, the defendants dispute whether the amount the plaintiff says she is owed is, in fact, due and owing.  Kingsbery says she worked 10 hours completing the billing after she was paid

on March 23, 2020, whereas Paddison disputes that she could have worked at all after March 23rd, considering the circumstances of her departure (including that the passwords on the computers were changed, she did not have files with her to prepare the billing, her access to the law firm accounts was suspended, and the locks to the law office were changed). Paddison also underscores that Kingsbery has never provided support for the hours she says she worked after she collected her paycheck on March 23, 2020 and departed the law office with no understanding of her future employment. As for Kingsbery's claim seeking to recover payment for unused vacation time, the defendants counter that the law office does not have a paid-vacation policy; it simply does not offer paid vacation.[12] Partial summary judgment is wholly inappropriate on this limited and disputed record.[13]

---

[12] Paddison points to a Payroll Audit conducted by the Louisiana Workforce Commission following the filing of this lawsuit. According to Paddison, the Payroll Audit showed that Kingsbery was not owed anything further, that she misreported her own wages and overreported her sister's wages, and that the "weekly salary paid by Kingsbery to herself overlapped into dates while she was away from the office, on vacation, and not working" which was unauthorized and outside the law office's policy of not paying employees for vacation time.

[13] Where the record discloses genuine disputes regarding material facts, summary judgment is patently inappropriate. It is also noteworthy that, according to the defendants, no discovery has been exchanged. The defendants submit that they propounded discovery requests to Kingsbery, but she had not yet answered as of August 11, 2021.

In their opposition papers, the defendants additionally offer up a number of purported defects undermining the plaintiff's claims: (i) Paddison, individually, is an improper defendant; (ii) Kingsbery received substantial cash payments for unemployment under the CARES Act, in part for the same period for which she seeks recovery for wages earned here; (iii) Kingsbery makes contradictory assertions concerning how much or how often she was paid; (iv) the law firm's payroll was audited by the Louisiana Workforce Commission, which revealed that Kingsbery, who was solely in charge of the payroll, may have taken it upon herself to pay herself for vacation time, though she was not authorized to do so;[14] (v) Kingsbery cannot succeed on her FLSA claim because she is exempted based upon the administrative exemption;[15] and (vi) that Kingsbery is exempt from seeking remedies under the FLSA likewise deprives this Court of subject matter jurisdiction.[16]

---

[14] The defendants submit that the audit revealed no additional wages owed but revealed that the weekly salary paid by Kingsbery to herself overlapped into dates when she was away from the office and not working.

[15] As for whether Kingsbery was, in fact, an administrative employee and thus exempt from the FLSA's overtime-pay remedy, the defendants are directed to the Court's observations in its May 12, 2021 Order and Reasons at pages 12-13; observations and accompanying case literature which defendants wholly ignore in their papers here.

[16] "Were she to seek summary judgment ... on her FLSA claim," the defendants speculate, "she would lose based on the administrative exemption and without the FLSA claim, this case should not be in federal court, because the Court would lack subject matter jurisdiction." Although the Court may *sua sponte* inquire into its own subject matter jurisdiction, given the defendants' contention that a determination as to this Court's subject matter jurisdiction

Having failed to seek affirmative relief on these issues, these contentions are lagniappe. The only issue before the Court is Kingsbery's motion for partial summary judgment on her LWPA claims.

IT IS ORDERED that the motion is DENIED. Counsel shall be mindful of 28 U.S.C. § 1927.

New Orleans, Louisiana, August 18, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

requires factual findings regarding whether the FLSA's administrative exemption is implicated -- findings which go to the merits of their affirmative defense -- the defendants are capable of engaging in the necessary discovery and raising the issue by supported motion practice. Whether dismissal for lack of subject matter jurisdiction is appropriate has not yet been established. Insofar as the defendants indicate that the case should be "remanded to state court where it should have commenced," this is a procedural impossibility because the lawsuit was filed originally in this Court, not removed from state court. Remand to a state court is thus not available.