# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARJORIE E. KINGSBERY | * | |
| (Plaintiff) | * | CIVIL ACTION NO. 20-3192 F (5) |
| | * | |
| VERSUS | * | |
| | * | JUDGE MARTIN L.C. FELDMAN |
| DAVID R. PADDISON, INDIVIDUALLY | * | |
| | * | |
| AND | * | |
| | * | |
| DAVID PADDISON, | * | |
| ATTORNEY-AT-LAW, LLC | * | |
| (Defendants) | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE

NOW INTO COURT, through undersigned counsel, come David R. Paddison, Individually ("Paddison") and David Paddison, Attorney-at-Law, LLC (the "Law Firm"), who respectfully submit that the following facts are material to their summary judgment motion and are not genuinely disputed.

1.     At all material times, plaintiff, Marjorie Kingsbery ("Kingsbery") was employed by the Law Firm.  Kingsbery was never employed directly by Paddison in his individual capacity.[1]

2.     When Kingsbery first came to work for the Law Firm, she informed stated that she needed to make at least $50,000 per year, a salary to which was agreed upon by Kingsbery and the Law Firm.[2]

---

[1] Sworn Declaration of of David R. Paddison, Exhibit A to the Memorandum in Support of Motion for Summary Judgment ("Paddison Dec."), ¶ 3; Defendants'...First Set of Requests for Admission to Plaintiff, Marjorie E. Kingsbery ("Req. for Admission"), ¶s 3, 17.
[2] Paddison Dec. ¶ 4.

3.      The Law Firm does not have a paid vacation policy and has never paid employees for their time away from the office while they are on vacation, a fact of which Kingsbery was aware.[3]

4.      During the entirety of her employ by the Law Firm, Kingsbery was always promptly and completely paid her salary when due.  At no time, during the entirety of her employ by the Law Firm, including the period for which she claims unpaid "overtime" in this lawsuit, did Kingsbery  ever demand any "overtime" pay, nor did she ever demand any vacation pay and she was not paid any.[4]

5.      During her employ by the Law Firm, Kingsbery was periodically given additional compensation, in the form of profit sharing, depending on the type of case she was working on and the Law Firm's financial status.[5]

6.      During the entirety of her employ by the Law Firm, Kingsbery was paid far more than the FLSA regulations' minimum wage requirement and in fact was paid more than $1,000 per week.[6]

7.      Kingsbery had a great deal of responsibilities in conjunction with her job duties and also exercised a great deal of autonomy.  She ran the Law Office and managed its business affairs.  She was responsible for keeping its accounts, books and records. She served as a paralegal and legal assistant to Paddison.  She had access to the Law Firm's bank accounts, clients' files, exercised control over co-employees and created policies and attempting to improve the workings of the Law Firm.

---

[3] Paddison Dec. ¶ 4; Req. for Admission, ¶ 14; Sworn Declaration of Lori Manville, attached to the Memorandum in Support of Motion for Summary Judgment as Exhibit B, ("Manville Dec."), ¶ 7.
[4] Paddison Dec. ¶ 5; Req. for Admission, ¶s 12, 13, 19, 26;  Manville Dec. ¶s 9, 12.
[5] Paddison Dec. ¶ 6.
[6] *Id.,* ¶s 4, 7, 38; Req. for Admission, ¶ 3; Manville Dec. ¶ 6.

Kingsbery created her own paychecks and the paychecks of the other full-time employee of the Law Firm, as well as the paychecks for any attorneys contracted to perform services for the firm. Kingsbery would then place them before Paddison to sign on behalf of the Law Firm, which he did, without question, since he placed a great deal of trust in Kingsbery. Kingsbery paid herself weekly. Kingsbery handled the funding of the payroll account, and she was responsible for ensuring that there were sufficient funds in the appropriate account to pay the payroll taxes. She also drafted pleadings, brainstormed issues with Paddison related to the Law Firm's clients and cases, scheduled hearings, established timelines, kept track of deadlines, dealt with clients and interfaced with other employees on Law Firm business. She was also expected to understand the rules of civil procedure and court rules. Kingsbery exercised discretion and independent judgment with respect to matters of significance to the Law Firm. In sum, Kingsbery was generally responsible for the Law Firm's day-to-day operations and her services were critical and essential to its operations.[7]

8.   Since Kingsbery was responsible for the payroll, she was permitted to use whatever method she chose to get to the agreed upon salary of at least $50,000.00 per year, whether it was $X per week, per month or per hour. That was totally within her discretion, but she was salaried.[8]

---

[7] Paddison Dec. ¶s 8, 11; Req. for Admission, ¶s 1, 2, 5, 6, 7, 27; Manville Dec., ¶s 5, 10.
[8] Paddison Dec. ¶ 9.

3

9.     Kingsbery kept her own hours and came and went from the office as she chose, often leaving during the workday for personal appointments. She was allowed great latitude in how she did her work.[9]

10.    Prior to the filing of this lawsuit, Kingsbery never complained of her job duties or exempt status during her employment.[10]

11.    In 2019 Kingsbery became disgruntled, and the quality of her job performance began to slip in several ways, including forgetting on two occasions to fund payroll taxes.  She began coming into work well after 9:00 a.m., and rarely worked on Fridays.  She created a voicemail message stating that the office was closed on Fridays (although sometimes she would come in and work Friday or at least a half the day.  Paddison began to become concerned that Kingsbery did not really care about working for the Law Firm anymore.[11]

12.    By March 16, 2020, it was apparent that COVID-19 was beginning to spread rapidly throughout Louisiana and the Governor began issuing executive orders in response.  The Governor issued a stay-at-home order on March 22, 2020, but the order exempted attorney's offices and further did not go into effect until 5:00 p.m. on March 23,2020.

13.    On March 23, 2020, Kingsbery and Paddison communicated about COVID-19 and whether the law office would be able to continue operating during the pandemic. At that time, Kingsbery indicated that she had been familiarizing herself with the CARES Act package.[12]

---

[9] Paddison Dec. ¶ 10
[10] Paddison Dec. ¶ 12.
[11] Paddison Dec. ¶s 13, 14; Req. for Admission, ¶s 4, 19.
[12] Paddison Dec. ¶ s 15, 16.

14.    Paddison and Kingsbery were in the Law Office on March 23, 2020.  After paying Kingsbery and the other full-time employee all that they were then owed, Paddison left the office to run an errand, but instructed Kingsbery to stay until his return, at which time, they would discuss operations in light of COVID. Contrary to Paddison's instructions, Kingsbery left the office with no understanding regarding future employment. Kingsbery ultimately requested furlough status that would allow her to draw not only state unemployment but an additional $600 dollars a week, for a total of some $900 per week, through the CARES Act enhancement. The Law Firm was requested to, and did, execute a furlouogh request so that Kingsbery could collect enhanced unemployment benefits under the CARES Act.[13]

15.    At no time on March 23, 2020, did Kingsbery represent that she was owed anything for alleged wages, "overtime," nor for any "vacation time," for the vacation that she had taken in February or any unused vacation time and in fact she was owed none, nor would she have been owed any, since, as she well-knew, the Law Firm does not pay employees for vacation time.[14]

16.    When Kingsbery requested the furlough so that she would be entitled to CARES Act benefits, she expressly represented to the Louisiana Workforce Commission in the furlough forms that no salary was owed to her and that she had been furloughed and laid off, effective as of March 23, 2020.  Based upon information and belief, Kingsbery received large sums of money in the form of unemployment

---

[13] Paddison Dec. ¶ 17, 18, 21, 24; Req. for Admission, ¶s 8, 10, 16.
[14] Paddison Dec. ¶ 19; Req. for Admission, ¶ 12, 13, 26; Manville Dec. ¶ 9, 12.

compensation, including the enhanced CARES Act benefits, from and March 23, 2020, until the benefits expired.[15]

17.   On April 3, 2020, Kingsbery informed Paddison that she had allegedly done the Law Firm's billing – a task that should have been completed prior to her departure on March 23, 2020.  Paddison was skeptical that Kingsbery had done any billing, since she did not come physically into the office to do it and did not have access to any files or information with which to do it due to the fact that by March 31, 2020, Paddison had changed the passwords on Kingsbery's computer and had removed her from the Law Firm's bank accounts.[16]

18.   On April 14, 2020, Kingsbery informed Paddison that she had allegedly spent 10 hours on billing, for which she wanted to be paid. At that point, Paddison asked her to provide him with a description of what she did for the 10 hours that she claimed she worked after March 23, 2020.  She did not provide any back-up for the alleged 10 hours at that time, nor has she ever provided any back-up or records of any kind, supporting her claim that she worked on the Law Firm's billing or anything else following her departure on March 23, 2020.  Indeed, she has now admitted, as a matter of law, in the Requests for Admission that she did not do any work for the Law Firm after her departure on March 23, 2020.[17]

19.   It was not until after Kingsbery's furlough papers had been signed and submitted, at her request, to the Louisiana Workforce, to which she had claimed that she was not owed anything at the time of the submission, that Kingsbery claimed she was

---

[15] Paddison Dec. ¶ 33; Req. for Admission, ¶s 9, 24.
[16] Paddison Dec. ¶s 22, 23, 25, 27.
[17] Paddison Dec. ¶s 31, 32, 34, 41, 42; Req. for Admission, ¶ 7, 11, 24.

owed for 10 hours, while refusing to provide any back-up or information relative to these hours.[18]

20.      Following the filing of this lawsuit, an audit (the "Payroll Audit") of the Law Firm's payroll accounts was conducted by the Louisiana Workforce Commission. This process was monitored by a certified public accountant, and Lori Manville, who was called upon by the Louisiana Workforce Commission to assist in the audit of the Payroll Audit. This is the only audit of the Law Firm's payroll records by the Louisiana Workforce Commission that has ever been conducted in 44 years of practice. All of the reporting to the Louisiana Workforce Commission had been done by Kingsbery during her employ with the Law Firm.[19]

21.      The Payroll Audit concluded that Kingsbery was not owed anything further and also concluded that Kingsbery misreported her own wages and overreported Chetta's wages. (See Exhibit 6 hereto).  The overreported difference, done solely by Kingsbery, was corrected by the tax agent via amendments.  There were no additional taxes due after the correction of the discrepancy solely precipitated by the reporting of Kingsbery.[20]  (See Exhibit 6 hereto).

22.      Kingsbery's W-2 salary for 2018 was $54,816.00 and for 2019 was $54,840.00.[21]

23.      The Payroll Audit revealed several occasions when the weekly salary paid by Kingsbery to herself overlapped into dates while she was away from the office, on vacation, and not working.

---

[18] Paddison Dec. ¶ 34.
[19] *Id.,* 36; Manville Dec. ¶s 5, 8.
[20] Paddison Dec. ¶ 37 and Exhibits 2 and 6 thereto; Manville Dec., ¶ 8.
[21] Paddison Dec. ¶ 38; Manville Dec. ¶ 6.

24.     On July 14, 2021, the Law Firm served Kingsbery's counsel, Dale E. Williams, Esq., with Defendants' First Set of Requests for Admission, directed to Kingsbery (the "Requests for Admission").  A copy of the Requests for Admission are attached hereto as Exhibit 7.  The Requests for Admission were served via Federal Express and were delivered to and signed for by Kingsbery's counsel's office the following day, July 15, 2021.  A copy of the cover letter and the delivery receipt are attached hereto as Exhibit 8.   As of the date of filing defendants' Motion for Summary Judgment, August 25, 2021, more than 30 days after service of the Requests for Admission, the Requests for Admission had not been answered or responded to by Kingsbery in accordance with F.R.C.P. 36.

Respectfully submitted,

*s/Ralph S. Whalen, Jr.*

_____
RALPH S. WHALEN, JR. (La. Bar #08319)
1100 Poydras Street #2950
New Orleans, LA 70163
Phone: (504) 525-1600
Facsimile: (504) 525-1606
Attorney for defendants,
David R. Paddison, Individually,
 and David R. Paddison,
Attorney-at-Law, LLC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have served a copy of the foregoing pleading on all counsel of record in this matter by email, facsimile, United States Mail and/or the Court's ECF system on this 25th day of August 2021.

_____/s/ Ralph S. Whalen, Jr._____