## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARJORIE E. KINGSBERY** | * | |
| (Plaintiff) | * | **CIVIL ACTION NO. 20-3192 F (5)** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE MARTIN L.C. FELDMAN** |
| **DAVID R. PADDISON, INDIVIDUALLY** | * | |
| | * | |
| **AND** | * | |
| | * | |
| **DAVID PADDISON,** | * | |
| **ATTORNEY-AT-LAW, LLC** | * | |
| (Defendants) | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SWORN DECLARATION OF DAVID R. PADDISON

STATE OF LOUISIANA
PARISH OF ST. TAMMANY

BEFORE ME, the undersigned Notary Public duly commissioned and qualified in this State and Parish, personally came and appeared

### DAVID R. PADDISON

who, after being duly sworn, did depose and state the following:

1.   I am an individual of the full age of majority and make this Declaration of my own personal knowledge and belief, on behalf of myself and on behalf of David R. Paddison, Attorney-at-Law, LLC (the "Law Firm"), of which I am the sole member.

2.   All of the factual allegations that are set forth in these proceedings and in this Declaration on my behalf and on behalf of the Law Firm are true and complete to the best of my knowledge and belief.  The exhibits attached hereto are true and correct copies of those attached documents.

1

3.       At all material times, plaintiff, Marjorie Kingsbery ("Kingsbery") was employed by the Law Firm.  Kingsbery was never employed directly by me in my individual capacity.

4.       When Kingsbery first came to work for the Law Firm, she informed me that she needed to make at least $50,000 per year, a salary to which I agreed on behalf of the Law Firm.  I also made Kingsbery aware that the Law Firm does not have a paid vacation policy and has never paid employees for their time away from the office while they are on vacation.  Employees are allowed to take vacation time, and Kingsbery took vacation time whenever she so desired, as long as the press of business permitted, but she was never paid for vacation time.  Kingsbery normally vacationed in Jamaica for a week each year and often went to Denver, Colorado for varying periods of time.  The last vacation that she took prior to leaving the Law Firm's employ was from February 19, 2020, through February 25, 2020, when she went to Denver.  She was not paid for these days, nor was she entitled to be paid for them.

5.       During the entirety of her employ by the Law Firm, Kingsbery was always promptly and completely paid her salary when due.  At no time, during the entirety of her employ by the Law Firm, including the period for which she claims unpaid "overtime" in this lawsuit, did Kingsbery ever demand any "overtime" pay, nor did she ever demand any vacation pay and she was not paid any.  It is inconceivable that, had Kingsbery believed that she was owed for "overtime" that was not paid going back 3 years to 2017, as she has claimed in this lawsuit, she would have waited 3 years to make any claim whatsoever for such.  Indeed, Kingsbery did not

2

make any claim for any unpaid "overtime' wages on March, 23, 2020 when she left the Law Office for the last time, nor in April, 2020, when she stated that she "needed to pick up a check," and claimed that she had spent 10 hours on billing, nor at the time her furlough papers were prepared and submitted to the Louisiana Workforce, nor in her demand letter of August 5, 2020, nor at any other time up until the filing of her Complaint in this action.

6. During her employ by the Law Firm, Kingsbery was periodically given additional compensation, in the form of profit sharing, depending on the type of case she was working on and the Law Firm's financial status.

7. During the entirety of her employ by the Law Firm, Kingsbery was paid far more than the FLSA regulations' minimum wage requirement and in fact was paid more than $1,000 per week.

8. Kingsbery had a great deal of responsibilities in conjunction with her job duties and also exercised a great deal of autonomy. She ran the Law Office and managed its business affairs. She was responsible for keeping its accounts, books and records. She served as a paralegal and legal assistant to Paddison. She had access to the Law Firm's bank accounts, clients' files, exercised control over co-employees and created policies and attempting to improve the workings of the Law Firm. Kingsbery further drafted pleadings, brainstormed issues with me related to the Law Firm's clients and cases, scheduled hearings, established timelines, kept track of deadlines, dealt with clients and interfaced with other employees on Law Firm business. She was also expected to understand the rules of civil procedure and court rules. Kingsbery exercised discretion and independent judgment with respect to

matters of significance to the Law Firm.   In sum, Kingsbery was generally responsible for the Law Firm's day-to-day operations and her services were critical and essential to its operations.

9.   Since Kingsbery was responsible for the payroll, she was permitted to use whatever method she chose to get to the agreed upon salary of  at least $50,000.00 per year, whether it was $X per week, per month or per hour.  That was totally within her discretion, but she was salaried.

10.   Kingsbery kept her own hours and came and went from the office as she chose, often leaving during the workday for personal appointments. She was allowed great latitude in how she did her work.

11.   As stated, Kingsbery created her own paychecks and the paychecks of her sister, Katherine Chetta ("Chetta"), the other full-time employee of the Law Firm, who Kingsbery was responsible for bringing in to work for the Law Firm, as well as for any contract employees periodically hired by the Law Firm, and simply placed them before me to sign on behalf of the Law Firm, which I did, without question, since I placed a great deal of trust in Kingsbery.  Kingsbery paid herself weekly basis and paid Chetta every two weeks.   Kingsbery handled the funding of the payroll account, and she was responsible for ensuring that there were sufficient funds in the appropriate account to pay the payroll taxes.

12.   Prior to the filing of this lawsuit, Kingsbery never complained of her job duties or exempt status during her employment.

13.   In 2019 Kingsbery became disgruntled, and the quality of her job performance began to slip.  She began coming into work well after 9:00 a.m., and rarely worked

on Fridays.  She created a voicemail message stating that the office was closed on

Fridays (although sometimes she would come in and work Friday or at least a half

the day).  She began overscheduling my court appearances.  She would sometimes

have three (3) or more hearings scheduled for me on the same day, often at the same

time or on overlapping times.  She started forgetting to calendar filing deadlines.

The filing was not being kept up to date and Kingsbery would often send me off to

court with incomplete files.  Files were getting lost or misplaced. These issues

persisted until the date on which Kingsbery left the Law Firm's employ on March

23, 2020.   Quite frankly, Kingsbery seemed overwhelmed and burned out.

Discussions with Kingsbery regarding these issues and correcting them had no

apparent effect. These continuing issues caused me to be in a constant state of

anxiety and put me at risk for disciplinary or malpractice actions. Kingsbery began

spending more and more time in Denver.  These things in combination caused me

to be concerned that Kingsbery did not really care about working for the Law Firm

anymore.

14.     Then, on two separate occasions in the February-March 2020 timeframe, Kingsbery

failed to fund payroll taxes and the Law Firm started to receive notices from the

IRS. When I questioned Kingsbery about her second failure to pay the payroll taxes,

she stated that she just "forgot" to transfer monies into the account to pay the Law

Firm's payroll taxes. See Exhibits 1 and 5 hereto.

15.     By March 16, 2020, it was apparent that COVID-19 was beginning to spread

rapidly throughout Louisiana and the Governor began issuing executive orders in

response.  The Governor issued a stay-at-home order on March 22, 2020, but the

order exempted attorney's offices and further did not go into effect until 5:00 p.m. on March 23,2020.

16.     On March 22, 2020, Kingsbery and I had communications about COVID-19 and how we were going to handle it.  There was a great deal of uncertainty at that time as to whether the law office would be able to continue operating during the pandemic.  At that time, Kingsbery indicated that she had been familiarizing herself with the CARES Act package.  I indicated that things might come to that point and Kingsbery ultimately requested furlough status that would allow her to draw not only state unemployment but an additional $600 dollars a week, for a total of some $900 per week, through the CARES Act enhancement.

17.     I, Kingsbery and Chetta were all in the office on March 23, 2020.  It was very obvious to me that they did not want to be there, but we needed to determine how we were going to keep the law practice going for the immediate future.  I had to leave the office to run an errand, but instructed Kingsbery to stay until I returned, at which time, we would discuss how to go forward.  Prior to leaving the office to run my errand, I paid Kingsbery and Chetta everything that they were owed by the Law Firm up to that point.  The Law Firm's billing through and including March 22, 2020, should have been completed at that time and I assumed that it had been.

18.     Contrary to my instructions, Kingsbery and Chetta left the office on March 23, 2020, apparently, immediately after I did, and I returned at a little after 10 a.m. to an empty office.  At 10:24 a.m., I texted Kingsbery to find out where she was and she curtly responded, "Where are you?"  At 12:15 p.m. I requested that she call the office.  At 1:27 p.m. I sent a text indicating that I had not known she was leaving,

6

to which she replied with a curt response, "I really didn't know you weren't going to pay me."  I responded I had never said that, and additionally relayed the following, "It just seems that you want to quit.  I don't like this texting not being able to direct or accomplish anything.  I am looking at alternatives.  Everyone is freaked out but if you just leave and don't want to communicate what am I supposed to assume?"  Over three hours later Kingsbery responded, "I don't understand anything in your text.  I told you yesterday that I was going to work from home as we all should. I don't want to meet with anyone in the office.  Why don't you understand that?  You are running around Covington and coming in and out of the office, I don't even want to be around [Chetta]. Roy and I are staying inside. Offered to bring work home which you didn't seem comfortable with that.  Don't know what alternatives you are looking at but that makes no sense either.  In my mind, your telling me we may have to file for unemployment means you don't intend to pay me so what am I to assume.  Bringing Yvonne in is the most ridiculous thing I have heard." (See Exhibits 2 and 3 hereto.)  At this point, I strongly suspected that Kingsbery did not intend to return to the office to work any time soon, which was going to put the Law Firm in a real bind.

19.     At no time on March 23, 2020, did Kingsbery represent that she was owed anything for alleged wages, overtime, nor for any "vacation time,"  for the vacation that she had taken in February or any unused vacation time and in fact she was owed none, nor would she have been owed any, since, as she well-knew, the Law Firm does not pay employees for vacation time.

20.    Kingsbery did not consult me about taking any of the Law Firm's files to her house and I was unaware that Kingsbery had taken any files.

21.    After Kingsbery left the law office on March 23, 2020, with no understanding between her and me, on behalf of the Law Firm, regarding future employment, she soon applied for enhanced unemployment benefits under the CARES Act. The Law Firm was requested to, and did, execute a furlough request so that Kingsbery could collect enhanced unemployment benefits under the CARES Act.

22.    When Kingsbery (and Chetta) unilaterally left the Law Firm on March 23, 2020, they left the office in complete chaos. I was unable to access their computers, which included all of the Law Firm's client files, as well as its payroll and accounting files.  Moreover, I discovered client files, filings and documents haphazardly scattered all throughout the office building and simply stuffed into drawers willy-nilly.  The state of utter chaos in which Kingsbery and Chetta left the Law Firm made it extremely difficult for the Law Firm to commence functioning again  and caused me, personally, great deal of anxiety.  In the following days, I implored Kingsbery to return to the office, to no avail, as I could not access QuickBooks, many parts of the server, or for that matter locate most of the clients' filings that were flung  throughout the office.  She did not offer any assistance whatsoever.  I was forced to retain an IT expert, on behalf of the Law Firm, to unlock Kingsbery's and Chetta's computers and to reconfigure them so that I could access the files that were maintained thereon.

23.    At the time Kingsbery departed the office on March 23, 2020, contrary to my instructions, she had access to the Law Firm's bank accounts and could move funds

between the accounts.  Suspecting that Kingsbery might not be planning to return to work anytime soon and in light of the known irregularities in the payroll account, particularly with respect to payroll taxes, I revoked her access to all of the Law Firm's bank accounts and commenced an audit of them.

24.     When Kingsbery was questioned on March 30, 2020, about her return to work, she finally responded "yes, I want to come back *when this is all over with*.  I will call you this afternoon if that is convenient to you."  There was no call.  Also, it was unknown at that time "when this would all be over with," so this open-ended response left the Law Firm to guess when Kingsbery might deign to return to work.

25.     On March 31, 2020, at 4:36 p.m. Kingsbery apparently discovered that she had been locked out of the bank accounts of the Law Firm.  It was then that Kingsbery said that she could not do the billing without access to the bank accounts.  That was when I realized that she had not completed the billing that should have been completed prior to her departure on March 23, 2020.

26.     On April 1, 2020, Kingsbery was confronted with not doing the billing for March that should have already been completed. There was another request for a call back at 3:04 p.m.  and once again there was no call back or communication.

27.     On April 3, 2020, Kingsbery stated that the billing had been done, but how she had managed to do any billing was a mystery to me, since she did not come physically into the office to do it and, to my knowledge, did not have access to any files or information with which to do it, as by March 31, 2020, the passwords on Kingsbery's and Chetta's computers had been changed.

28.     By April 1, 2020, I had actively begun seeking replacements for both Kingsbery and Chetta.

29.     On April 6, 2020, I again requested of Kingsbery, "will either of you come to work, I need some help, I am trying to get something completed and out, can you call for a moment?"  There was no response until 8:46 p.m. when Kingsbery made the revelation that she had taken a muscle relaxer and was asleep from 1:39 p.m. until 8:46 p.m.  (See Exhibit 9 hereto).

30.     On April 7, 2020, at 10:42 a.m. another request was made for Kingsbery to call the office.  Her responses on April 8 and 9, and 11, 2020, were that she needed to pick up a check; however, she had already been paid everything that was owed to her before she left the office on March 23, 2020.

31.     On April 14, 2020, at 9:03 a.m., Kingsbery communicated with me claiming that she had spent 10 hours on billing, for which she wanted to be paid.  At that time, I was aware that Kingsbery had removed some files from the office, without my consent or authorization, when she left on March 23, 2020.  I demanded that she return the files and leave them at the front door of the office, along with a list of clients that she claimed to have worked for after her departure on March 23, 2020, as well as a description of what she did for them for the 10 hours that she claimed she worked after March 23, 2020, when she had no files related to billing, and no access to bank accounts.  There was no further communication from Kingsbery, from April 14, 2020, until August, when she sent the demand latter, although her husband did return some client files to the office door but did not ever bring or produce the requested back-up for the 10 hours Kingsbery claims to have worked

after March 23, 2020 from an unknown location.  Kingsbery has also refused to provide any information to the Law Firm relative to any files, forms or documents she downloaded from the Law Firm's computer system for her future exclusive use and utilization, despite requests for that information.

32.     Indeed, to this day, Kingsbery has never provided one iota of detail or back up showing what work she claims to have done after March 23, 2020, nor has she ever even provided the Law Firm with any list of client files that she claims to have worked on after March 23, 2020. As she was not working in the office after March 23, 2020, I had no idea what she was doing or what she had done and it was incumbent upon her to demonstrate to me, on behalf of the Law Firm, that she had worked the hours that she claimed to have worked and that money was owed to her. She made no attempt to do so. There are no records anywhere demonstrating that Kingsbery worked 10 hours after March 23, 2020, or that she is owed any money from the Law Firm beyond the amount she was paid on March 23, 2020, before she left the Law Office, never to return. She certainly has not demonstrated and cannot demonstrate that she is owed anything for any vacation time, as the Law Firm does not pay employees for vacation time, as Kingsbery was well-aware.

33.     When Kingsbery requested the furlough so that she would be entitled to CARES Act benefits, she conjunctively represented to the Louisiana Workforce Commission in the furlough forms that no salary was owed to her and that she had been furloughed and laid off, effective as of March 23, 2020.  Based upon information and belief, Kingsbery received large sums of money in the form of

unemployment compensation, including the enhanced CARES Act benefits, from and March 23, 2020, until the benefits expired.

34. It was not until after Kingsbery's furlough papers had been signed and submitted, at her request, to the Louisiana Workforce that Kingsbery claimed she was owed for 10 hours, while refusing to provide any back-up or information relative to these hours and although she has claimed that these hours were for "billing," she was not in possession of any files related to billing, and had no access to bank account during the period that she claims to have worked on "billing."

35. On information and belief, Kingsbery received at least $900 per week in unemployment benefits enhanced by the CARES Act package, retroactive to March 23, 2020, until the CARES Act enhancements to state unemployment expired. Thus, she is claiming wages, at least in part, for the same time she received enhanced unemployment benefits.  It was not until August 5, 2020, when it was common knowledge that the CARES Act enhancement were soon to expire, that I received a cryptic and confusing letter, by certified mail, demanding to be paid for 10 hours of work and vacation time. I quickly responded to her correspondence and stated that I did not agree that she was owed anything and that she had failed to provide or produce any evidence that she worked any hours after her departure at 10:00 a.m. on March 23, 2020.

36. Following the filing of this lawsuit, an audit (the "Payroll Audit") of the Law Firm's payroll accounts was conducted by the Louisiana Workforce Commission. This process was monitored by a certified public accountant, and Lori Manville, who was called upon by the Louisiana Workforce Commission to assist in the audit of

the Payroll Audit. This is the only audit of the Law Firm's payroll records by the Louisiana Workforce Commission that has ever been conducted in 44 years of practice. All of the reporting to the Louisiana Workforce Commission had been done by Kingsbery during her employ with the Law Firm.

37.     The Payroll Audit concluded that Kingsbery was not owed anything further and also concluded that Kingsbery misreported her own wages and overreported Chetta's wages. (See Exhibit 6 hereto).  The overreported difference, done solely by Kingsbery, was corrected by the tax agent via amendments.  There were no additional taxes due after the correction of the discrepancy solely precipitated by the reporting of Kingsbery.  (See Exhibit 6 hereto).

38.     As demonstrated by the audit conducted by Louisiana Workforce and her own W-2 forms, Kingsbery's W-2 salary for 2018 was $54,816.00 and for 2019 was $54,840.00 which amounted to a $24.00 difference between the two years.  The difference is totally attributable to Kingsbery, since she created her own paychecks (as well as Chetta's) and entered such all information into QuickBooks.  I did not even have access to the Law Firm's QuickBooks until after Kingsbery's departure, when I had to retain an IT expert.  Discrepancies existing at that time were corrected with Lori Manville.

39.     While the Payroll Audit demonstrated no wages or additional taxes owed, it did reveal several occasions when the weekly salary paid by Kingsbery to herself overlapped into dates while she was away from the office, on vacation, and not working.  Thus, because Kingsbery was in control of the Law Firm's payroll, it is possible that she may have paid herself vacation pay, but to the extent that she did

so, such payments were unauthorized and outside the Law Firm's policy of not paying employees for vacation time.

40.     By her own admission Kingsbery worked for the Law Firm in a managerial capacity, handling the legal and general business operations of the Law Firm. She was without question compensated at a salary or fee basis that exceeded $1,000.00 a week.

41.     Kingsbery was not owed any monies beyond what she was paid on March 23, 2020, and she has never presented any evidence to the contrary or to support her claim for the amounts that she alleges to be owed.

42.     At no time has Marjorie Kingsbery ever left any dates, times or lists of what she worked on after her abrupt departure from the office at 10:00 a.m. on March 23, 2020, or attempted to explain ten (10) hours from home, when she had no computer access or any further access to the bank accounts.

43.     On July 14, 2021, I and the Law Firm caused to be served on Kingsbery's counsel, Dale E. Williams, Esq., with Defendants' First Set of Requests for Admission, directed to Kingsbery (the "Requests for Admission"). A copy of the Requests for Admission are attached hereto as Exhibit 7. The Requests for Admission were served via Federal Express and were delivered to and signed for by Kingsbery's counsel's office the following day, July 15, 2021. A copy of the cover letter and the delivery receipt are attached hereto as Exhibit 8. As of the date of filing defendants' Motion for Summary Judgment, August 25, 2021, more than 30 days after service of the Requests for Admission, the Requests for Admission had not been answered or responded to by Kingsbery in accordance with F.R.C.P. 36.

44. I declare under penalty under perjury that the foregone is true and complete to the

best of my knowledge and belief.

**DAVID R. PADDISON**

**SWORN TO AND SUBSCRIBED BEFORE ME,**
**THIS 25TH DAY OF AUGUST 2021.**

JOHN M ROBIN

**NOTARY PUBLIC**
**Print Name/No:** 11341

15

**To:**

Mar 16, 2020, 8:54 AM

Why is IRS drawing funds from payroll account

It is overdrawn

Payroll taxes.

How does this account get sideways  I need a payroll service that I thought was involved

It isn't sideways. Payroll service? Why do you think one was involved???


EXHIBIT
1a

To:

Which service is involved. How can account overdraw

David. I paid the taxes on Friday and forgot to move money.

No service involved. Don't know what you are talking about

Mar 16, 2020, 5:10 PM

Wrong number on Breaux

Mar 16, 2020, 9:00 PM



EXHIBIT

1b

**Margie** ›

Mar 22, 2020, 8:51 PM

Are you and Roy ok?

Mar 23, 2020, 8:24 AM

Where r u??

Where r u

No.  U

Mar 23, 2020, 10:15 AM

Call please

Mar 23, 2020, 11:27 AM

Well. I really didn't know you were leaving

I really didn't know you weren't going to pay me.



   

are running around Covington and coming in and out of the office. I don't even want to be around Kathy. Roy and I are staying inside. I offered to bring work home but you didn't seem comfortable with that. Don't know what alternatives you are looking at but that makes no sense either. In my mind you telling me we may have to file for unemployment means you don't intend to pay me so what am I to assume. Bringing Yvonne in is the most ridiculous thing I've heard.

Mar 26, 2020, 8:13 PM


EXHIBIT
3

# Margie ›

Apr 6, 2020, 11:39 AM

Are either of you going to work. I do need some help

Apr 6, 2020, 1:01 PM

I am trying to get something out. Can you call for a moment

Apr 6, 2020, 6:46 PM

Eeek! David I pulled a muscle in my back this afternoon and took a muscle relaxer and went to bed and just woke up. I hope you got in touch with Kathy. I totally apologize. I'll call you in the morning.



Can you save one for

  iMessage 

# Margie >

Apr 8, 2020, 3:04 PM

> I will be back there soon and call

Apr 14, 2020, 9:03 AM

Roy is going to bring the files to the office at noon today.  Can u please leave the door unlocked so he can put them on the couch in the waiting room. I worked 10 hours that I haven't been paid for.

> Leave at door with a list of what you did for the 10 hours and what you took.

EXHIBIT
5



## LOUISIANA WORKFORCE COMMISSION

**John Bel Edwards**
Governor

**Ava Dejoie**
Secretary

July 15, 2021

David R. Paddison Attorney at Law LLC          Employer Account Number: 454525-0
600 Covington Center
Covington, LA 70433

CERTIFIED MAIL RECEIPT #7017 2400 0000 4182 3681

Dear Mr. Paddison,

This letter serves as notification that the audit of your 2019 payroll records for SUTA account 454525-0 has been completed. An audit discussion was held with Lori Manville, EA, your designated representative via phone on July 15, 2021. The detailed findings are as follows:

1. Majorie Kingsbery's W2 wages totaled $54,840.00 and her reported wages totaled $53,470.00. This is an underreported difference of $1,370.00. Further research determined Ms. Chetta's W2 wages were $41,285.00 and her reported wages totaled $42,655.00. This is an over reported difference of $1,370.00. According to the payroll records submitted, the discrepancies occurred in the 1st quarter of 2019. The overall amount of reported wages was correct. See chart below: The tax agent corrected the discrepancies for the 1st quarter 2019 via online amendments.

| NAME | 1ST QTR REPORTED | 1ST QTR ACTUAL | DISCREPANCY |
|------|------------------|----------------|-------------|
| M. KINGSBERY | $10,822.00 | $12,192.00 | ($1,370.00) |
| K. CHETTA | $12,192.00 | $10,822.00 | $1,370.00 |

The audit resulted in a change to the employer's account with no additional net tax due as both individuals had met the agency taxable threshold. The audit finding was not the result of the misclassification of workers.

If you have any questions, please contact me.

Sincerely,

Stephen Sparks
UI Tax Agent II
1711 Nashville Avenue
Hammond, LA 70401, P: 985-543-4012, F: 985-543-4982, ssparks1@lwc.la.gov
cc: Lori Manville, EA

**EXHIBIT**
**6**

# STATE OF LOUISIANA - LOUISIANA WORKFORCE COMMISSION - OFFICE OF UI ADMINISTRATION - PAYROLL AUDIT REPORT

| | |
|---|---|
| Account # | 484838-0 |
| Federal ID# | 72-1359494 |
| LA Revenue # | 8931206-001 |
| Verified | YES |
| Verified | YES |

| | |
|---|---|
| Employer Name | DAVID R PADDISON ATTORNEY AT LAW LLC |
| DBA Name | DAVID R PADDISON ATTORNEY AT LAW LLC |
| Street Address | 600 COVINGTON CENTRE |
| City/State/Zip | COVINGTON, LA 70433 |

| | |
|---|---|
| Assignment # | 20212-2613 |
| Start Date | 20210427 |
| Completion Date | 20210528 |
| Completion Time | 12 HOURS |
| Year | 2019 |

| # | SS# | EMPLOYEE NAME | 1ST QTR GROSS | 1ST QTR EXCESS | 1ST QTR TAXABLE | 2ND QTR GROSS | 2ND QTR EXCESS | 2ND QTR TAXABLE |
|---|---|---|---|---|---|---|---|---|
| 1 | | MARJORIE KINGSBERY | 1,370.00 | 1,370.00 | 0.00 | | | |
| 2 | | KATHRYN CHETTA | (1,370.00) | (1,370.00) | 0.00 | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |
| 13 | | | | | | | | |
| 14 | | | | | | | | |
| 15 | | | | | | | | |

| | 1ST QTR GROSS | 1ST QTR EXCESS | 1ST QTR TAXABLE | 2ND QTR GROSS | 2ND QTR EXCESS | 2ND QTR TAXABLE |
|---|---|---|---|---|---|---|
| TOTALS FOR THIS PAGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ADDITIONAL ADJUSTMENTS TOTALS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ADJUSTMENT TOTALS (NET) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | 1ST QTR | | | 2ND QTR | | |
|---|---|---|---|---|---|---|
| AUDITED GROSS WAGES BY QUARTER | 23,014.00 | | | 28,734.00 | | |
| ** GROSS WAGES REPORTED BY QUARTER | 23,014.00 | | | 28,734.00 | | |
| AUDITED UNDERREPORTED GROSS WAGES | 1,370.00 | | | 0.00 | | |
| AUDITED OVERREPORTED GROSS WAGES | (1,370.00) | | | 0.00 | | |
| AUDITED EXCESS WAGES BY QUARTER | 7,614.00 | Actual | | 28,734.00 | Actual | |
| AUDITED TAXABLE WAGES BY QUARTER | 15,400.00 | | | 0.00 | | |
| ** TAXABLE WAGES REPORTED BY QUARTER | 15,400.00 | | | 0.00 | | |
| AUDITED UNDERREPORTED TAXABLE WAGES | 0.00 | | | 0.00 | | |
| AUDITED OVERREPORTED TAXABLE WAGES | 0.00 | | | 0.00 | | |
| AUDITED TOTAL TAX BY QUARTER | 75.46 | "TAX" TAX DUE | | 0.00 | "TAX" TAX DUE | |
| "EA12" COMPUTED TAX BY QUARTER | 75.46 | | | 0.00 | | |
| AUDITED UNDERREPORTED TAX | 0.00 | | | 0.00 | | |
| AUDITED OVERREPORTED TAX | 0.00 | | | 0.00 | | |
| -- TAX PAID BY QUARTER | 75.46 | | | 0.00 | | |
| AUDITED NET TAX DUE BY QUARTER | 0.00 | | | 0.00 | | |

| | | |
|---|---|---|
| TOTAL WAGES VERIFIED | YES | |
| TAXABLE WAGES VERIFIED | YES | |

ERROR CODE: 7

(REV 11/99)

| Account# | 454625-0 | Liability Date | 19970101 | Rate Year | 0.0049 2019 | Auditor # | 26 |
|---|---|---|---|---|---|---|---|
| Assignment# | 20212-2613 | Qualifying Date | 19970101 | | | Taxable Wage Base | $7,700.00 |

| | | Number of New Employees | 0 | Grand Total | |
| TOTAL REPORTED WAGES | 96,125.00 | Total # of Employees Audited | 2 | 0 | |
| TAXABLE REPTD WAGES | 15,400.00 | # of Quarters Audited | 4 | 2 | |
| TOTAL TAX PAID | 75.46 | | | 4 | |

| 3RD QTR GROSS | 3RD QTR EXCESS | 3RD QTR TAXABLE | 4TH QTR GROSS | 4TH QTR EXCESS | 4TH QTR TAXABLE | TOTAL GROSS | TOTAL EXCESS | TOTAL TAXABLE |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |
| 13 | | | | | | | | |
| 14 | | | | | | | | |
| 15 | | | | | | | | |
| P.1 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,370.00 | 1,370.00 | 0.00 |
| ADD. 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,370.00) | (1,370.00) | (1,370.00) |
| TOT. 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 24,518.00 | | | 21,859.00 | | | 96,125.00 | - TOTAL AUDITED GROSS WAGES FOR YEAR | 15,400.00 |
| 24,518.00 | | Actual | 21,859.00 | Actual | | 96,125.00 | - **TOTAL EXCESS WAGES REPORTED FOR YEAR | 16,400.00 |
| 0.00 | | | 0.00 | | | 1,370.00 | - TOTAL AUDITED UNDERREPORTED GROSS WAGES | 0.00 |
| 0.00 | | | 0.00 | | | (1,370.00) | - TOTAL AUDITED OVERREPORTED GROSS WAGES | |
| | | | | | | | - TOTAL AUDITED EXCESS FOR YEAR | 80,725.00 |
| 24,518.00 | | | 21,859.00 | | | | - TOTAL AUDITED TAXABLE WAGES FOR YEAR | |
| 0.00 | | | 0.00 | | | | - **TOTAL TAXABLE WAGES REPORTED FOR YEAR | |
| 0.00 | | **SMP TAX DUE | 0.00 | **SMP TAX DUE | | 0.00 | - TOTAL AUDITED UNDERREPORTED TAXABLE WAGES | |
| 0.00 | | | 0.00 | | | 75.46 | - TOTAL AUDITED TAX FOR YEAR | |
| 0.00 | | | 0.00 | | | 75.46 | - **EA12 - TOTAL REPORTED TAX FOR YEAR | |
| 0.00 | | | 0.00 | | | 0.00 | - TOTAL AUDITED OVERREPORTED TAX | |
| 0.00 | | | 0.00 | | | 75.46 | - **TOTAL TAX PAID FOR YEAR | |
| 3Q GROSS | 3Q EXCESS | 3Q TAXABLE | 4Q GROSS | 4Q EXCESS | 4Q TAXABLE | 0.00 | - TOTAL AUDITED NET TAX DUE FOR YEAR | |

| | REMITT AMT $ FOR | NONE | TOTAL EXCESS | DATE-RECD | TOTAL TAXABLE |
|---|---|---|---|---|---|

PARISH(ES)

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| MARJORIE E. KINGSBERY | * | |
| (Plaintiff) | * | CIVIL ACTION NO. 20-3192 F (5) |
| | * | |
| VERSUS | * | |
| | * | |
| DAVID R. PADDISON, INDIVIDUALLY | * | |
| | * | |
| AND | * | |
| | * | |
| DAVID PADDISON, | * | |
| ATTORNEY-AT-LAW, LLC | * | |
| (Defendants) | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

**DEFENDANTS' DAVID R. PADDISON, INDIVIDUALLY, AND DAVID PADDISON, ATTORNEY-AT-LAW, LLC'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF, MARJORIE E. KINGSBERY**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendants, David R. Paddison, Individually ("Paddison") and David Paddison, Attorney-at-Law, LLC (the "Law Firm"), by and through its attorney, Ralph S. Whalen, Jr., requests that Plaintiff, Marjorie E. Kingsbery admit the following requests in writing, and serve her response upon the undersigned attorneys at 1100 Poydras Street, Suite #2950, New Orleans, LA 70163 within thirty (30) days of service of these requests for admission.

## DEFINITIONS

The following definitions shall apply to these requests for admission:

1. **"Complaint"** means the Complaint in the above-captioned action filed in the United States District Court for the Eastern District of Louisiana on November 24, 2020, entitled Marjorie E.



Kingsbery v. David Paddison, Attorney-at-Law, LLC and David R. Paddison, Individually, Civil Action No. 20-3192 F(5).

2.  **"Kingsbery," "You"** or **"Your"** means Marjorie E. Kingsbery, the plaintiff in the above-captioned action, and your subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which you may be a party, and/or each of your employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time during the relevant time period specified in any of the requests below.

3.  **"Defendants"** or **"ASKING PARTY"** means Defendants, David R. Paddison, Individually and/or David Paddison, Attorney-at-Law, LLC, in the above-captioned action.

4.  **"Document(s)"** means all materials within the scope of Federal Rule of Civil Procedure 34, including, without limitation, electronically-stored information (ESI), writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible things. The term "Document(s)" includes but is not limited to emails or messages (such as text, instant, direct, or other types of messages), social media or other online content, and content obtained from the Internet of Things (IoT), workplace collaboration tools, and ephemeral messaging applications. The term "Document(s)" [also] includes all appendices, schedules, exhibits, and other attachments, as well as related and relevant metadata for all ESI, including but not limited to information about the document's author, creation date, revision dates, tracked changes, and electronic comments. A draft or nonidentical copy of a document is a separate document within the meaning of this term.

5. **"Relate,"** **"related,"** or **"relating"** means, in addition to their usual and customary meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing, alluding to, describing, evidencing, constituting, or otherwise having any logical or factual connection with the subject matter addressed.

6. The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring within the scope of each request for admission all responses which otherwise might be construed to be outside the scope of a request for admission.

## INSTRUCTIONS

1. Unless you properly object to a request, you must, under Federal Rule of Civil Procedure 36, admit, specifically deny, or state in detail why you cannot truthfully admit or deny each of the following requests based on knowledge and information in your possession, custody or control, or in the possession, custody or control of your representatives, agents, or attorneys. If you do not respond to each of these requests within thirty (30) days, the requests will be deemed admitted under Federal Rule of Civil Procedure 36.

2. If you object to or refuse to answer any request for admission on the ground that the answer reflects or would reveal the substance of a confidential or privileged communication, identify:

   a.       the nature of the privilege claimed.

   b.       the person who made the communication, whether oral or in writing.

   c.       if the communication was oral, all persons present during the communication.

   d.       if the communication was written, the author, addressees, and any other recipients.

   e.       the relationship of the author of the communication to each recipient.

3

        f.        the relationship of the persons presents to the person who made the communication.

        g.        the date and place of the communication.

        h.        the general subject matter of the communication; and

        i.        other information sufficient to enable a full assessment of the applicability of the privilege claims, as required by FRCP 26(b)(5), the court's local rules, and the judge's individual practice rules.

3.    Unless otherwise specified in any of the requests for admission below, these requests for admission cover the time period from March 23, 2017, through the present.

4.    These requests for admission are continuing in nature. If you receive or otherwise become aware of information that would change your answer to any of these requests for admission after you have served your response, you must comply with Federal Rules of Civil Procedure 26(e) and 36(b) by promptly supplementing your answers or filing the appropriate motion.

5.    Answers to these requests for admission shall be served upon the undersigned attorneys at 1100 Poydras Street, Suite #2950, New Orleans, LA  70163 within thirty (30) days of service of these requests.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Please admit that your position with the Law Firm was as a paralegal, legal assistant and legal assistant.

**REQUEST NO. 2:**  Please admit that in carrying out your duties in conjunction with your employment with the Law Firm, you were given autonomy in the performance of your duties.

4

**REQUEST NO. 3:**   Please admit that you have never been paid a minimum wage and received a consistent salary of in excess of $50,000.00 per year.

**REQUEST NO. 4:** Please admit that you recorded a voice recording at and for the Law Office that stated normal hours of business were Monday through Thursday 8:30a.m.-5:00p.m. and further stating that the Law Firm was closed on Fridays.

**REQUEST NO. 5:** Please admit that you were solely responsible for the creation and processing of your own paychecks and those of other employees, including your sister.

**REQUEST NO. 6:** Please admit that as part of the duties of your employment, you deposited and/or transferred all funds to the Law Firm's payroll account and were solely responsible for the calculation and payment of payroll taxes from January 1, 2018 until the cessation of your employment on March 23, 2020.

**REQUEST NO. 7:** Please admit that you did not return to your employment with the Law Firm after March 23, 2020.

**REQUEST NO. 8:** Please admit that you suggested and encouraged that you be furloughed due to the COVID-19 pandemic and that you requested that your application for unemployment benefits not be objected to or fought by the Law Firm.

**REQUEST NO. 9:** Please admit that you received unemployment benefits provided by the State of Louisiana and the Federal government in conjunction with the CARES ACT, retroactively to March 23, 2020.

**REQUEST NO. 10:** Please admit that you received a paycheck on March 23, 2020, and promptly left the office.

**REQUEST NO. 11:** Please admit that you did not work or make any attempt to work until your unemployment benefits provided by the State of Louisiana, as enhanced by the Federal government pursuant to the CARES ACT, began running out in July 2020.

**REQUEST NO. 12:** Please admit and that at no time have you ever made any demand for any alleged overtime owed.

**REQUEST NO. 13:** Please admit that you at no time reached out to the accountants or anyone else with concerns about overtime.

**REQUEST NO. 14:** Please admit that there is no vacation policy that was ever in effect with any defendant herein.

**REQUEST NO. 15:** Please admit that at no time had you complained that you could not respond because of muscle relaxers or any type of injury prior to your departure on March 23, 2020.

**REQUEST NO. 16:** Please admit that you were not terminated but opted to be furloughed in favor of receiving enhanced unemployment benefits under the CARES ACT.

**REQUEST NO. 17:** Please admit that you were never employed by David R. Paddison, individually, but were employed exclusively by David R. Paddison, Attorney-At-Law, LLC.

**REQUEST NO. 18:** Please admit that all paychecks that you prepared were processed and funds were transferred from accounts belonging to David Paddison, Attorney-At-Law, LLC.

6

**REQUEST NO. 19:**   Please admit that you frequently kept hours worked that were unreported to anyone.

**REQUEST NO. 20:**   Please admit that on or about March 30, 2020, Margery Paddison, who was filling in at the Law Office in your absence, made numerous efforts, at the behest of Paddison, on behalf of the Law Firm, to hire you back and/or to get you to return to work.

**REQUEST NO. 21:**   Please admit you never responded to any requests to rehire after March 23, 2020.

**REQUEST NO. 22:**   Please admit that you utilized your position and office computers for personal matters.

**REQUEST NO. 23:**   Please admit that during the three years prior to the cessation of your employment with the Law Firm, you took numerous vacations, both abroad and to visit your daughter in Colorado and that you processed your own paychecks during this time.

**REQUEST NO. 24:**   Please admit that you worked no hours in April of 2020 and were in fact compensated retroactive to March 23, 2020, by unemployment benefits provided by the State of Louisiana, as enhanced by the Federal government pursuant to the CARES ACT.

**REQUEST NO. 25:**   Please admit that you have never been requested to travel outside of the State of Louisiana on any matter in conjunction with your employment by the Law Firm.

**REQUEST NO. 26:**   Please admit that at no time prior to the filing of this Complaint that you have ever advanced any claim for overtime payments to either of the Defendants, the accountants for the Law Firm, or anyone else employed by the Law Firm.

**REQUEST NO. 27:**  Please admit or deny that you did not keep regular hours and did not work on most Fridays or if you did work Friday, you consistently left early.

**REQUEST NO. 28:**   Please admit that upon your departure of Morris, Lee & Bayle, LLC you threatened this type of action against that law firm under similar pretenses with claims of lost vacation time and alleged overtime.

Respectfully submitted,

*s/Ralph S. Whalen, Jr.*

RALPH S. WHALEN, JR. (La. Bar #08319)
1100 Poydras Street, #2950
New Orleans, LA 70163
Telephone: (504) 525-1600
Facsimile: (504) 525-1606
*Attorney for Defendants,*
*David R. Paddison and David R. Paddison,*
*Attorney-at-Law, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants', David R. Paddison, Individually and David Paddison, Attorney-at-Law, LLC, First Set of Requests for Admission to Marjorie E. Kingsbery, has been sent via FedEx No. 8111-7903-1575, this 14th day of July, 2021 on Dale E. Williams, 212 Park Place, Covington, LA 70433.

*s/Ralph S. Whalen, Jr.*

RALPH S. WHALEN, JR. (La. Bar #08319)

8

# DAVID R. PADDISON
## ATTORNEY AT LAW, LLC
### 600 COVINGTON CENTER
### COVINGTON, LOUISIANA 70433

DAVID R. PADDISON†                    EMAIL: office@davidpaddison.com                    † BOARD CERTIFIED FAMILY LAW SPECIALIST
                                     TELEPHONE (985) 893-2380
                                     FACSIMILE (985) 893-2511

July 14, 2021

**VIA FEDEX # 8111-7903-1575**
Mr. Dale E. Williams
212 Park Place
Covington, LA 70433

      RE:    Marjorie E. Kingsbery v.
             David R. Paddison, Individually, et al
             USDC, EDLA, No. 20-3192 F(5)

Dear Mr. Williams:

      Mr. Ralph Whalen is in a Federal Trial this week and asked that I forward to you the enclosed discovery that he is propounding upon your client, Marjorie E. Kingsbery, as follows:

1. Defendants' David R. Paddison, Individually, and David Paddison, Attorney-at-Law, LLC's First Set for Requests for Admission to Plaintiff, Marjorie E. Kingsbery; and

2. Defendants' First Set of Document Request to Plaintiff, Marjorie E. Kingsbery.

      Kindly respond within the time delay allowed by law.

                      Sincerely,

                      Mindy E. Holden
                      Paralegal to David R. Paddison

/mh
Enclosures
cc:   Mr. Ralph Whalen (w/enc.)



EXHIBIT
8







TRACK ANOTHER SHIPMENT

811179031575

**ADD NICKNAME**

# Delivered
## Thursday, July 15, 2021 at 9:08 am



**DELIVERED**
## Signed for by: M.MYSEY

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| **FROM** | **TO** |
|---|---|
| COVINGTON, LA US | LA US |

## Travel History

**TIME ZONE**
Local Scan Time

**Thursday, July 15, 2021**

| 9:08 AM | LA | Delivered |
|---|---|---|
| 8:37 AM | COVINGTON, LA | Delivery exception<br>Customer not available or business closed |
| 7:08 AM | COVINGTON, LA | On FedEx vehicle for delivery |
| 6:41 AM | COVINGTON, LA | At local FedEx facility |

**Wednesday, July 14, 2021**

| 7:02 PM | COVINGTON, LA | At local FedEx facility |
|---|---|---|
| 10:14 AM | COVINGTON, LA | Picked up |

## Shipment Facts

| **TRACKING NUMBER** | **SERVICE** | **WEIGHT** |
|---|---|---|
| 811179031575 | FedEx Standard Overnight | 0.5 lbs / 0.23 kgs |
| **DELIVERED TO** | **TOTAL PIECES** | **TOTAL SHIPMENT WEIGHT** |
| Receptionist/Front Desk | 1 | 0.5 lbs / 0.23 kgs |
| **TERMS** | **PACKAGING** | **SPECIAL HANDLING SECTION** |
| Shipper | FedEx Envelope | Deliver Weekday |
| **SHIP DATE** | **STANDARD TRANSIT** | **ACTUAL DELIVERY** |
| 7/14/21 ⓘ | 7/15/21 before 4:30 pm ⓘ | 7/15/21 at 9:08 am |