# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARGIE E. KINGSBERY | |
|     Plaintiff | CIVIL ACTION: 20-3192 |
| versus | |
| DAVID PADDISON, | |
| ATTORNEY-AT-LAW LLC | JUDGE: MARTIN L. C. FELDMAN |
| and | MAGISTRATE: MICHAEL B. NORTH |
| DAVID R. PADDISON, INDIVIDUALLY | |
|     Defendants | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT

### *INTRODUCTION*

    This Memorandum is filed in opposition to the Motion for Summary Judgment filed by Defendants, David Paddison, Attorney-at-Law LLC and David Paddison, Individually, Rec., Doc. 37.

    It should be noted at the outset that Defendants' Motion is deeply flawed. It is flawed because Defendants' arguments are premised largely on the false notion that Plaintiff failed to respond timely to their Requests for Admissions, and that those requested admissions are to be deemed admitted pursuant to Fed. R. Civ. P. 36.[1]

    The facts surrounding the chronology of Defendants' Requests for Admissions are these: Defendants' Requests were served on undersigned counsel on or about July 15.[2] The requests

---

[1] See Defendants' Memorandum in Support of Motion for Summary Judgment, hereafter, "Motion", Rec. Doc. 37-2, discussion at pp. 1, 10-11; and throughout, consistently making reference to Plaintiff's supposed admissions in footnotes 4, 6, 7, 8-11,16, 17, 19-22, 24, 28-30, 32, and 35.

[2] Defendants' Motion, p. 2.

1

propounded by Defendant were responded to promptly by Ms. Kingsbery and mailed via United States Certified Mail to opposing counsel Mr. Whalen's office on Poydras Street on August 4, 2021. See **Exhibit B.** They were received and signed for at his office address on August 6th, 2021.  See **Exhibit C.** The undersigned has no explanation for why opposing counsel was apparently unaware of this.

In this Opposition Memorandum, Plaintiff traverses almost every material fact which Defendants have put forward in their Motion for Summary Judgment.

***FACTS***

While Plaintiff was employed by Defendant she frequently did work personally for Mr. David Paddison.  Specifically, she found and managed Mr. Paddison's rental properties located in New Orleans and Covington.  Additionally, she paid Mr. Paddison's property taxes, utility bills, insurance and did other managerial tasks related to his personal homestead located in Kooskia, Idaho.  Additionally she paid Mr. Paddison's personal bills, credit cards, reconciled bank statements for his personal rental properties, personally took him to dental appointments, and dropped his car off to be serviced.  These activities had nothing to do with his legal practice. Plaintiff was Mr. Paddison's personal secretary and her duties included performing work for his law practice.[3]

She was never paid a salary.  She never discussed an annual salary with Mr. Paddison.  She was initially paid $22.00 per hour and was told that Mr. Paddison was paying two part-time helpers $23.00 per hour, therefore she could not be paid more.  By the time Plaintiff left, she was being

---

[3] See Plaintiff's Statement of Material Facts which are in Dispute, hereafter "Plaintiff's Statement", ¶ 1. See also, **Exhibit B** Plaintiff's Responses to Requests for Admissions, hereafter "Responses" nos. 1, 2 and 17.

2

paid $24.00 per hour. She personally kept track of the hours and notified Mr. Paddison of the hours she actually worked. She kept a daily log of my hours, just like the other employees there.[4]

She was paid vacation pay for every year she worked for Defendants since 2014. At that time she and her husband began taking annual trips to the Caribbean.[5] These checks were made out to her by another member of the office staff until 2018. Each paycheck she received indicated the hours she worked and each paycheck would be for a different amount, depending on the number of hours which she worked.[6]

Margie Kingsbery was paid for the vacations she took. She often had conversations with Mr. Paddison at least since 2017 where she informed him that she was working 50 to 60 hours a week, and that she needed to be paid more. She worked the number of hours it took to keep the business going. She started doing the bookkeeping after his longtime bookkeeper retired in 2018 and the number of hours she worked kept increasing. There is no reason to question that Mr. Paddison knew about the number of hours she worked, and he knew that Ms. Kingsbery complained that she was not being paid enough for doing that work. In addition Kingsbery has personal knowledge that Ms. Kathy Chetta, who was employed by Mr. Paddison as a secretary, was paid for vacation time which she took.[7]

Kingsbery received a Christmas bonus each year she was there. In addition she received two payments, one of $1,000 and another of $2,000 when large personal injury cases were resolved. There was no "profit sharing."[8] She was paid more than a minimum wage, but was

---

[4] See Plaintiff's Statement, ¶ 2; see also **Exhibit D**, Declaration of Kathryn Chetta, ¶¶ 2-6.
[5] See **Exhibit A**, Itinerary and pay checks for vacation time. One check, found on the page Bates stamped MK0036 indicates, in the memo, "Pay Period: 05/15/2016 – 05/21/2016 5 VACATION D". The check was signed by David R. Paddison.
[6] See Plaintiff's Statement, ¶ 3; see also **Exhibit D**, Declaration of Kathryn Chetta, ¶ 8.
[7] See Plaintiff's Statement, ¶ 4.; see also **Exhibit A** and See **Exhibit D**, Declaration of Kathryn Chetta, ¶ 8.
[8] See Plaintiff's Statement, ¶4.

never paid overtime for the many hours which she worked for Paddison and his law firm, all with Paddison's knowledge and approval.[9]

Kingsbery does not contest that she was paid more than the minimum wage, but she was never paid overtime for the many hours which she worked for Mr. Paddison and his law firm, with Mr. Paddison's knowledge and approval. There was no job description for what she did for Paddison. She did what Paddison told her to do. She was not authorized to make any material decisions which affected the outcome of litigation and knew that a line existed between performing secretarial functions and practicing law. She never exercised any independent judgment on a matter which materially affected the law practice or Paddison's personal finances or personal matters. Mr. Paddison insisted that she obtain his permission before anything was done.[10]

Plaintiff kept track of her hours, which was entered into the QuickBooks system. This generated her paycheck. But the system never paid her the overtime she was due. She was only paid an hourly rate, according to the QuickBooks system. Her paycheck varied every week, depending on the hours she worked. She was never free to determine her hours and had to work the hours necessary to accomplish the tasks necessary, as assigned by Paddison. She ate her lunch at her desk, and only very rarely left for personal business. When she did take a lunch hour, she would report it on her timesheet.[11]

Before the lawsuit, she complained frequently that she was doing the job of three people: bookkeeper, secretary and paralegal as well as his significant personal business. Paddison was certainly aware of the many over 40 hours she worked, because they were reflected on her paystubs. On one occasion, Rachael at Resource Bank notified her that additional funds were

---

[9] Plaintiff's Statement, ¶¶ 5, 6.
[10] Plaintiff's Statement ¶¶ 6,7. See **Exhibit B**, Responses, no. 2.
[11] Plaintiff's Statement ¶¶ 8,9. See **Exhibit D**, Declaration of Kathryn Chetta, ¶ 11

needed in the Payroll account, which was immediately done.  She never came to work after nine am, and always worked on Fridays.  The voicemail message was issued with Mr. Paddison's approval so that work could be done.  The message indicated that the office was to be closed at 1 PM on Friday.[12]

Kingsbery had serious reservations about coming to work in a busy office and dealing with many clients and communicated this concern to Mr. Paddison.  He was typically OK with her taking work home and coming into the office after hours to catch up.  She never had any idea of what the CARES Act was while employed by Mr. Paddison.  She told him that she would continue to work from her home and after hours.  She asked if that would be OK with him.  When she left on March 23, 2020, she had no idea that she was not going to come back to work.[13]

The entirety of Mr. Paddison's paragraph 14 is a fabrication.  She was paid on March 23, 2020, because she was paid every Monday.  Shortly after she arrived at the office that morning, at about 8:30 Mr. Paddison called to inform her that she would have to file for unemployment.  She asked why, because it was her impression that the shutdown would last only a couple of weeks.  When Paddison came into the office, they had a brief discussion that she would continue to work for the office, but that she would have to be paid unemployment. She stated that she was unwilling to receive unemployment benefits while continuing to do work for him and said that she can't do both.  She had no knowledge at that point of the $600.00 CARES Act supplement and  objected to collecting unemployment while doing the work of the office, which she believed Mr. Paddison was suggesting.  Mr. Paddison told her at 10:00am that he was leaving and would be right back.  He made no mention of discussing anything else later that day.  He was well aware that she was

---

[12] Plaintiff's Statement ¶¶ 10, 11. **See Exhibit B**, Responses, no. 19.  **Exhibit B**, Responses, no. 27.
[13] Plaintiff's Statement ¶¶ 12, 13.

intending to take her work home after he left. When she left that day on March 23, she was intending to remain employed with Paddison and his law firm. Accordingly, she said nothing about being paid anything.[14]

She never requested to be furloughed and did not apply for any unemployment benefits as long as she considered herself employed by Mr. Paddison and his law firm. When she applied for unemployment benefits she was not expecting either to be rehired by Mr. Paddison, nor was she expecting Mr. Paddison to honor his commitment to pay her what he owed her. At that time, the sum she believed he owed her only amounted to about $240.00. Her unemployment benefits did not begin until the middle of April. She was never paid retroactively to March 23, because she continued to work for Mr. Paddison and his law practice.[15]

She always did the bills at the end of every month, usually the first week of the following month. Paddison did not change the password on the accounts. She, in fact, did the bills and informed Paddison by text how much money to move from the Trust account to the Operating account. More particularly, she told him that he had to wait for two clients to pay into the trust account, before moving any money. She emailed the bills to each client from her office account by logging into TeamViewer, which logs her into her work desktop. The billing records surely exist to show this happened in the way she describes. The bills which she sent via the firm's Team

---

[14] Plaintiff's Statement ¶¶ 14, 15. See **Exhibit B**, Responses, no. 8. See **Exhibit D**, Declaration of Kathryn Chetta, ¶¶ 12-14.

[15] Plaintiff's Statement ¶ 16. **See Exhibit B**, Responses no. 8. Additionally, **see Rec., Doc.30-2**, Statement of Undisputed Material Facts, no. 2 and Plaintiff's Exhibit 1, pp. 021 and 022, **Rec., Doc 30-3**, pp. 18, 21 and 22 of 24.

Viewer are adequate proof that the work was done. The paper backup for the billing was returned to Paddison's office when her husband returned office material to Paddison.[16]

Mrs. Kingsbery has no knowledge of any of the allegations of paragraph 20, or why Mr. Paddison was audited by the Louisiana Workforce Commission.[17]

She has no knowledge of any of the allegations of paragraph 21.[18]

Mrs. Kingsbery was paid hourly and her scheduled hours were 42.5 per week, each week. The audit showed she was being paid for times she was not at work because she was being paid for vacation, which Mr. Paddison surely knew.[19]

The request for admissions propounded by the Defendant were completed promptly by Ms. Kingsbery and mailed via certified mail to Mr. Whalen's office on Poydras Street on August 4, 2021. The exhibits which are identified in this document were documents which were kept by Mrs. Kingsbery or are business records of the litigation of this case. They are true copies of the originals.[20]

### *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences

---

[16] Plaintiff's Statement ¶¶ 17, 18, 19. See **Exhibit D**, Declaration of Kathryn Chetta, ¶¶ 13, 14.
[17] Plaintiff's Statement ¶ 20.
[18] Plaintiff's Statement ¶ 21.
[19] Plaintiff's Statement ¶¶ 22, 23.
[20] Plaintiff's Statement¶¶ 24, 25. **See Exhibit B.** They were received and signed for on August 6th, 2021. **See Exhibit C**.

in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372 (2007). A factual "issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party," and " 'material' if its resolution could affect the outcome of the action." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir.2007)." *Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 226 (5th Cir. 2015)

The summary judgment standard in an employment discrimination matter is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Thereunder, the Court must first determine if the plaintiff has established a prima facie case of discrimination, sufficient to raise an inference of discrimination. *McDonnell-Douglas*, 411 U.S. at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a prima facie standard is used for evidentiary purposes on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The McDonnell-Douglas formula . . . is applicable . . . in a . . . summary judgment situation.").

Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); see *Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing Burdine, 450 U.S. 248). "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to different factual situations." *McDonnell,* 411 U.S. at 802 n.13. "There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).

In *Fierros v. Texas Dept. of Health*, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned that summary judgment is not favored in claims of employment discrimination

8

and  that  the Supreme Court in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of  credibility determinations, the weighing of the evidence, and the drawing of inferences from legitimate the facts, which are jury functions, not those of a judge.  *Fierros*, 274 F.3d at 190-91.

## APPLICABLE LAW
### Fair Labor Standards Act Claims

Section 207 of the FLSA requires employers to pay all covered employees at least one and a half times their regular rate of pay for hours worked in excess of forty hours per week.[21] An employer must compensate employees for all work it suffers or permits.[22] Management has a duty to "exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."[23]

To be exempt under the FLSA's administrative employee exemption, which is what Defendants claim here, the employee must meet **ALL** of the following criteria:

1. Compensated on a salary basis at least $455 per week;
2. His primary duty must be the performance of non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
3. The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 *et seq.*

"The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform

---

[21] 29 U.S.C. § 207(a)(1).
[22] 29 U.S.C. § 203(g).
[23] 29 C.F.R. § 785.13; *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 533 (S.D. Tex. 2008).

work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201.

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term must be applied in the light of all the facts involved in the employee's particular employment situation and ==implies that the employee has authority to make an independent choice, free from immediate direction or supervision.==" 29 C.F.R. § 541.202 (==Supplied==). "The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. 541.202(b). "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the

company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202(b).

The Administrative Exemption cannot apply to the secretarial position held by Kingsbery because Kingsbery's primary duty was not the related to Defendants' management or general business operations, and she did most emphatically did not exercise discretion and independent judgment with respect to matters of significance.

As a secretary, Kingsbery's primary job duty was to manage Mr. Paddison's rental properties located in New Orleans and Covington.  Additionally, she paid Mr. Paddison's property taxes, utility bills, insurance and did other ministerial tasks related to his personal homestead located in Kooskia, Idaho.  Additionally she paid Mr. Paddison's personal bills, credit cards, reconciled bank statements for his personal rental properties, personally took him to dental appointments, and dropped his car off to be serviced.  These activities had nothing to do with his legal practice.  Plaintiff was Mr. Paddison's personal secretary and her duties included performing work for his law practice.[24]  This law work consisted in doing just what Mr. Paddison told her to do.  Kingsbery was not authorized to make any material decisions which affected the outcome of litigation.  She knew that a line existed between performing secretarial functions and practicing law.  She never exercised any independent judgment on a matter which materially affected the law practice or Mr. Paddison's personal finances or personal matters.  Mr. Paddison insisted that she obtain his permission before anything was done.[25]

---

[24] See Plaintiff's Statement, ¶ 1. See also, **Exhibit B** Plaintiff's Responses to Requests for Admissions, hereafter "Responses" nos. 1, 2 and 17.
[25] Plaintiff's Statement, ¶ 7.

**Louisiana Wage Act Claims**

LA Rev Stat § 23:631 provides, in pertinent part,

> CHAPTER 6. PAYMENT OF EMPLOYEES
> §631. Discharge or resignation of employees; payment after termination of employment
> A.(1)…
> (b) ***Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.***
> (2) …
> (3) …
> B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. ***The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592 [Summary Proceedings].***
> ***Supplied.***

Under Louisiana Revised Statute 23:631, Kingsbery is owed $9,888.00 for gross past due wages for the payday ending on Monday, April 13, 2020.[26]

## 2. Penalty Wages

LA Rev. Stat § 23:632 provides, in pertinent part,

§632. Liability of employer for failure to pay; attorney fees

> ***Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay***, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
> ***Supplied.***

---

[26] Verified Complaint. Rec. Doc. 1 at ¶¶ 28,29.

In this present case, the Defendants claim that they are not liable for penalty wages, or any amount owing, because its debt was never created in the first place. Defendants claim that Kingsbery never worked after she left the law firm's premises on March 23, 2020.

To recover penalty wages, the claimant must show that (1) wages were due and owing, (2) demand for payment thereof was made where the employee was customarily paid, and (3) the employer did not pay upon demand. Winkle v. Advance Products Systems, 98-694 (La.App. 3d Cir.10/28/98), 721 So.2d 983.[27]

Plaintiff has here and will prove that 1) the Defendants owed her wages at the time of her resignation[28], 2) she made written demand upon Defendants at its customary place of business, which is where she was customarily paid[29] and 3) the Defendants failed and refused to tender any amounts in payment[30].

Plaintiff will prove the following Amount Owed and Penalty Wages:

Plaintiff's (gross) daily wage is approximately $216.00, which is arrived at by dividing her last monthly (gross) pay of approximately $4,320 by 20 workdays per month. Plaintiff will be entitled to penalty wages, at the rate of approximately $216.00 per day for 90 days. Since that day has long passed, Plaintiff's entitlement to penalty wages will have reached its 90-day maximum of $19,440.00.

---

[27] A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error. Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689.
[28] Plaintiff's Statement, ¶¶ 17-21.
[29] Plaintiff's Statement, ¶ 31.
[30] Undisputed.

**CONCLUSION**

Plaintiff Marjorie Kingsbery has shown that many, if not almost all material facts in both her FLSA and her Louisiana Wage Claim are hotly contested. Counsel for Defendants is mistaken; Plaintiff responded timely to Defendants' Requests for Admissions, and not in a way which helped their defense. Summary judgment is therefore not appropriate in this circumstance, and the Court should therefore deny Defendants' Motion in its entirely and by so doing allow discovery to proceed.

Respectfully submitted,

/s Dale E. Williams
Dale E. Williams, Bar #18709
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile: (985) 892-2640
dale@daleslaw.com