UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARJORIE E. KINGSBERY                                CIVIL ACTION

v.                                                   NO. 20-3192

DAVID PADDISON,                                      SECTION "F"
ATTORNEY-AT-LAW LLC, ET AL.

ORDER AND REASONS

Before the Court is the defendants' motion for summary judgment. For the reasons that follow, the motion is DENIED.

**Background**

This lawsuit arises from a paralegal and law office manager's allegations that her former employer failed to pay her overtime, wages earned, and vacation days accrued before she stopped working for the law office over a disagreement regarding whether she would be permitted to work from home during the COVID-19 pandemic.

Few background facts are undisputed.[1] Marjorie Kingsbery worked for nine years at David Paddison's law office, David R.

---

[1] The Court assumes familiarity with prior proceedings and incorporates its May 12, 2021 Order and Reasons, which summarized the facts as alleged in the complaint. Likewise, the Court incorporates its Order and Reasons denying the plaintiff's motion for partial summary judgment. See Order and Reasons dtd. 8/18/21.

1

Paddison, Attorney-at-Law, LLC. Her precise title is disputed,[2] as are the timing and circumstances of her departure from employment, as well as whether she was an hourly or salaried employee.[3] Kingsbery was employed by the law office until March 23, 2020 (says Paddison, when Kingsbery abruptly left the office after she received her paycheck for wages owed through March 23, 2020) or sometime in April 2020 (says Kingsbery, after completing 10 hours' worth of billing work from home). As a result of the COVID-19 shutdown, Paddison believed Kingsbery wanted to quit and

---

As the Court observed on August 18, certain facts are now of record. And most are disputed. See id. (noting that "[c]lear factual disputes preclude summary judgment" and "[p]artial summary judgment is wholly inappropriate on this limited and disputed record").

[2] The parties' descriptions of Kingsbery's job description conflict both with each other and internally. Kingsbery claimed in her complaint that she was a "qualified paralegal" but now states in her opposition that she was a "personal secretary and her duties included performing work for his law practice." Paddison states that Kingsbery "ran the law office," "exercised a great deal of autonomy," and "served as a paralegal and legal assistant."

[3] In her complaint, Kingsbery states that she was an hourly employee, received a weekly salary, and had a daily pay rate. In her sworn statement attached to her opposition, Kingsbery now contends she was never paid a salary and was paid $24 an hour. In his own sworn declaration and motion for summary judgment, Paddison maintains that Kingsbery was a salaried employee and that they agreed the law firm would pay her at least $50,000 per year. Paddison also submits that she was periodically given additional compensation in the form of profit-sharing. Paddison states that Kingsbery was responsible for the payroll and she was permitted to use whatever method she chose to get to her $50,000 per year salary. According to Paddison, Kingsbery kept her own hours, coming and going as she chose.

Kingsbery believed she was going to continue to work for the law office from her house.

Paddison paid Kingsbery on March 23, 2020 for work completed through that day. On April 14, 2020, Kingsbery twice emailed Paddison, requesting payment for unpaid wages for 10 hours she says she spent on billing work after March 23, 2020 as well as unused vacation days. Months later on August 5, 2020, Kingsbery sent Paddison a certified letter seeking unpaid wages and vacation time. Paddison responded by stating that he disputed that she was owed additional wages and that she failed to produce any corroborating evidence that she had worked any hours after her departure at 10:00 a.m. on March 23, 2020.[4] As for the request that she be paid for vacation days she had accrued but not used, Paddison claims that the law firm has a policy in which it does not pay employees for vacation time, a policy Paddison submits Kingsbery knew well.[5]

A few months after Paddison failed to comply with Kingsbery's certified demand letter, Kingsbery sued David Paddison and his law

---

[4] The parties dispute the circumstances of Kingbery's departure; whether she was paid hourly or whether she was salaried; whether the law office had a policy of paying its employees while on vacation; whether Kingsbery worked "overtime;" whether Kingsbery worked 10 hours after she left the office on March 23, 2020.
[5] Nevertheless, at paragraph 39 of in his 15-page affidavit, Paddison admits that a Payroll Audit "reveal[ed] several occasions when the weekly salary paid by Kingsbery to herself overlapped into dates while she was away from the office, on vacation, and

office, David Paddison, Attorney-at-Law LLC, alleging that (i) the defendants failed to compensate her for regularly working overtime and failed to pay her at all for hours worked in April 2020, in violation of the Fair Labor Standards Act; and (ii) the defendants' failure and refusal to pay her unpaid wages, benefits, penalty wages, and attorney's fees violated the Louisiana Wage Payment Act. The defendants initially moved to dismiss for insufficient service of process and for failure to state a claim. Addressing only insufficient service of process, on February 22, 2021, the Court granted the motion to dismiss without prejudice to the plaintiff's ability to correct the service deficiencies, which her counsel has since done. The Court reinstated the case and the original complaint once service was properly effected.[6]

The defendants then moved to dismiss the complaint under Rule 12(b)(6). On May 12, 2021, the Court granted in part and denied in part the motion. The motion was granted as to any *prescribed* Fair Labor Standards Act claims; the motion was denied as to any timely FLSA unpaid overtime claim and as to any Louisiana Wage Payment Act claim for unpaid wages and accrued vacation time.

---

not working. Thus, ... it is possible that she may have paid herself [unauthorized] vacation pay[.]" No written vacation policy is of record.
[6] When the plaintiff requested that the Court set aside its February 22 Order and Reasons dismissing without prejudice her claims, the Court construed the motion as a request to restore the case to the active docket and granted the request.

4

Then, on July 12, 2021, the plaintiff filed a motion for partial summary judgment on her LWPA claims. Finding clear fact issues precluding summary judgment, the motion was denied. <u>See</u> Order and Reasons dtd. 8/18/21 (noting that "[c]lear factual disputes preclude summary judgment" and "[p]artial summary judgment is wholly inappropriate on this limited and disputed record"). Despite the Court's request that counsel shall be mindful of 28 U.S.C. § 1927, the defendants now move for summary judgment, primarily on the ground that the plaintiff failed to respond to requests for admissions and therefore has admitted facts that undermine each of her claims; the defendants' predicate for summary judgment has since been proven false.[7]

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty</u>

---

[7] Plaintiff's counsel did indeed timely submit responses to requests for admission; to which counsel for defendants responds that no one was in his office to receive them and defendants' counsel appears to continue to attempt to blame plaintiff's counsel for defendants' counsel's failure to go to his office to discover that responses were indeed timely served there. Despite basing the summary judgment motion on the plaintiff's purported deemed admissions, the defendants now say in a reply paper that summary judgment remains appropriate, despite dueling affidavits.

5

Lobby, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017)(citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003); Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").  The non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Ultimately, to avoid summary judgment, the non-movant "must go

6

beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

The Court must not evaluate the credibility of witnesses on a paper record, nor may it weigh evidence. When considering summary judgment motions prior to a bench trial, however, the Court in non-jury cases "has somewhat greater discretion to consider what weight it will accord the evidence" and "to decide that the same evidence, presented to him . . . as a trier of fact in a plenary trial, could not possibly lead to a different result." Jones v. United States, 936 F.3d 318, 321-22 (5th Cir. 2019)(citations, internal quotations omitted).

## II.

The defendants seek summary relief dismissing each of the plaintiff's claims. The Court considers each in turn.

7

*A.*

The defendants first submit that summary judgment is appropriate on the plaintiff's claims to recover overtime pay, under the Fair Labor Standards Act, 29 U.S.C. § 207. The plaintiff counters that the defendants have not carried their burden of demonstrating that there are no genuine disputes of material fact or that they are entitled to judgment as a matter of law on the FLSA claims. In other words, fact issues preclude summary judgment. The Court agrees.

The plaintiff alleges that the defendants violated the Fair Labor Standard Act's overtime provision. The FLSA requires that employers pay their hourly employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). Certain types of employees are exempt from this rule and thus ineligible to recover overtime. The defendants contend that two exemptions are triggered; that the plaintiff is exempt from receiving overtime pay because she was both an administrative and professional employee. 29 C.F.R. § 541.0 sets out an exemption to the FLSA overtime requirements for any employee employed in a "bona fide executive, administrative or professional capacity." To qualify as a bona fide administrative employee, three factors must be met. The employee 1) must be compensated on a salary or fee basis of at least $684 per week, 2)

8

must perform office or non-manual work directly related to management or general business operations of the employer, and 3) exercises discretion and independent judgment on significant matters in the performance of her primary duty. 29 C.F.R. § 541.200. 29 C.F.R. § 541.602 defines "salary basis." The general rule is that

> [a]n employee will be considered to be paid on a "salary basis" ... if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

To qualify as an exempt professional employee, this same salary basis test applies. Specifically, an employee 1) must be compensated on a salary or fee basis of more than $683 per week and 2) must engage in primary duties that require advanced knowledge in a field acquired by prolonged intellectual instruction or requiring invention, imagination, originality, or talent in an artistic or creative endeavor. 29 C.F.R. § 541.300.

Neither side acknowledges that the Fifth Circuit, *en banc*, recently examined the salary basis test in Hewitt v. Helix Energy Solutions Group, Incorporated, --- F.4th ---, 2021 WL 4099598 (5th Cir. Sept. 9, 2021); see also Adams v. All Coast, L.L.C., --- 4th ---, 2021 WL 4470027 (5th Cir. Sept. 30, 2021)(Jones, J. and Elrod, J., dissenting)("For the second time in two months, this court

flouts Encino Motorcars, L.L.C. v. Navarro, U.S. , 138 S. Ct. 1134, 200 L.Ed. 2d 433 (2018).... Recently, this court [in Hewitt] misinterpreted the executive, administrative, and professional exemption...and its accompanying regulations...to award overtime to an offshore oil toolpusher who managed at least a dozen employees and earned over $200,000 annually."). In Hewitt, Helix Energy claimed that the plaintiff, a toolpusher, was exempt from overtime as a highly compensated employee despite his pay being computed on a daily basis. The Fifth Circuit disagreed, holding that in order for an employee compensated on an hourly or daily rate basis to satisfy the salary basis test, the two regulatory requirements of § 541.604(b) must be met: there must be an arrangement that contains at least a minimum weekly guarantee of pay and a reasonable relationship between the guaranteed amount and the amount actually earned. Helix Energy failed to comply with either prong.

Notably, "both the Secretary of Labor and the Supreme Court" as well as the Fifth Circuit "have observed that 'employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid.'" See Hewitt, 2021 WL 4099598, at *1 (citations omitted). In other words, "earning a certain level of income is necessary, but insufficient on its own, to avoid the overtime protections of the FLSA." Id. Defendants in particular ignore this instruction.

10

Here, the parties dispute whether Kingsbery was paid on an hourly or weekly basis to the exclusion of being "salaried" ... as defined *not* by the regulations, but ... by the defendants. Neither attempts to navigate the salary basis test and the applicable regulations. Even if the parties could agree that Kingsbery's earnings were computed on an hourly basis, as the Fifth Circuit recently observed, "[t]here are multiple components to the salary-basis test [including] the general rule [as well as] various exceptions and provisos to that general rule." Hewitt, 2021 WL 4099598, at *3, *7 ("There is no principled basis for applying or ignoring § 541.604(b) based on how much the employee is paid"). The defendants fail to contend with the case law, the salary basis test, or the regulations. For this reason alone, the defendants have failed to carry their burden to show that they are entitled to judgment as a matter of law dismissing Kingsbery's FLSA claims. Any future motion practice or briefing directed to the FLSA claims shall address the salary basis test generally and the Hewitt case specifically in the context of the facts of this case. Counsel's failure to educate themselves on the substantive law applicable to the plaintiff's FLSA claim and failure to submit competent evidence relevant to this governing standard is wholly unacceptable. See 28 U.S.C. § 1927.

In addition to the legal shortcomings of the motion for summary judgment, clear factual disputes preclude summary judgment

11

on the plaintiff's FLSA overtime claims. Essentially every fact is disputed as to the plaintiff's FLSA claims. These facts include:

- Whether Kingsbery worked overtime, whether the defendants knew that she worked overtime, whether she complained about not receiving overtime pay; whether overtime was paid;

- Whether in addition to being employed by the law firm, Kingsbery could be considered to be employed by Paddison in his individual capacity as well, considering some of her alleged job duties;

- The plaintiff's job responsibilities;

- The plaintiff's job title;

- Whether Kingsbery exercised autonomy in her job without the approval of the defendants;

- Whether the plaintiff was paid hourly;[8]

---

[8] To be fair, it is unclear if the defendants genuinely dispute this fact (Paddison states under oath that "Kingsberry paid herself (sic) weekly basis" and "Kingsbery ... was permitted to use whatever method she chose to get to the agreed upon salary of at least $50,000.00 per year, whether it was $X per week, per month or per hour. That was totally within her discretion, but she was salaried."). The defendants appear singularly focused on how much Kingsbery was compensated annually, assuming (wrongly) that their view of the term "salary" comports with the FLSA's regulatory salary basis test. Regardless, this focus demonstrates a misapprehension of the FLSA, its regulations, and the salary basis test, which at best distracts from whether the defendants genuinely dispute that Kingsbery was, in fact, paid hourly. Again, the Court

12

- Whether the parties agreed in advance that Kingsbery would be paid $50,000 per year;
- Whether the plaintiff frequently left the office for personal reasons and was allowed to keep her own hours.

Because there are genuine disputes as to these facts and other material facts which the parties do not address due to their failure to be informed about the applicable salary basis test, summary judgment dismissing the plaintiff's FLSA claims is wholly inappropriate on this record.

*B*

Second, the defendants submit that summary judgment is appropriate on the plaintiff's claims to recover actual unpaid wages, including unpaid vacation, under the Louisiana Wage Payment Act, La.R.S. § 23:631. The plaintiff counters that the defendants have not carried their burden of demonstrating that there are no genuine disputes of material fact or that they are entitled to judgment as a matter of law on the Louisiana Wage Payment Act claims. In other words, fact issues preclude summary judgment. The Court agrees.

---

underscores that reading the applicable regulations along with the Hewitt case will disabuse counsel of the notion that Kingsbery being paid more than $50,000 each year renders her ineligible for overtime pay under the FLSA.

13

The Louisiana Wage Payment Act[9] obliges an employer promptly to pay an employee earned wages due upon the employee's discharge or resignation. See La.R.S. § 23:631; see also Newton v. St. Tammany Fire District No. 12, 20-0797 (La.App. 1 Cir. 2/19/21), 318 So.3d 206, 211 ("The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after [her] dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers.").[10] Vacation pay is considered an amount then due in accordance with the employer's vacation policy if the employee is eligible, has accrued vacation time with pay and the employee has not been compensated or taken the vacation time as of the date the employment terminates. See § 23:631(D)(1). The LWPA punishes employers who fail to promptly pay their former employees whatever amount is indisputably due; in addition to penalty wages, the LWPA provides for an award of reasonable attorney fees, provided that certain conditions are met. Bergeron v. Ochsner

---

[9] La.R.S. § 23:631, et seq., is also known as the Louisiana "Last Paycheck Law."

[10] The LWPA "provides that contracted-for wages -- 'the amount then due under the terms of employment' -- must be paid to an employee within a certain time frame after termination or resignation." See Bennett v. McDermott International, Incorporated, 855 Fed.Appx. 932, 935 (5th Cir.)(unpublished, per curiam, citation omitted)("Unlike the FLSA[,] the Louisiana statute at issue, the LWPA, does not establish a minimum wage or overtime protection."). "To prove 'terms of employment,' a plaintiff need not show a written agreement existed; a 'normal procedure' or 'internal policy' will suffice." Id. at 939 (citation omitted).

Health System, No. 17-519, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017)(citation omitted).

To recover on a claim for unpaid wages under the LWPA, an employee must show "[1] that [the defendant] was her employer, [2] that the employee/employer relationship ceased to exist, [3] that at the time that the employee/employer relationship ended she was owed wages, and [4] that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days." See Bergeron, No. 17-519, 2017 WL 3648451, at *2 (citation omitted). To recover penalty wages, the plaintiff must establish three things: (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand. See Rodriguez v. Green, 2012-0098 (La. App. 4 Cir. 06/20/12), 111 So. 3d 1, 5 (citations omitted).

When the plaintiff moved for partial summary judgment on her LWPA claims, the motion was denied because clear factual disputes precluded summary judgment. Nothing has changed and, yet, now defendants move for summary judgment with the same factual controversies obstructing summary relief. Yet again, clear factual disputes preclude summary judgment on the plaintiff's LWPA unpaid wage, unpaid vacation, and penalty wage claims. Essentially every fact is disputed as to the plaintiff's LWPA claims. These facts include:

- Whether the defendants owe plaintiff the amount she is claiming;

- Whether the plaintiff in fact worked additional hours after March 23, 2020 and, if so, what she worked on and how she was able to accomplish any work when Paddison swears he limited her access to files and that she had no access to the law firm computer system after March 23;[11]

- The circumstances of the plaintiff's departure on March 23, 2020;

- Whether the law firm had a paid vacation policy[12] or whether, in practice, law firm employees were paid for vacation days;

---

[11] Kingsbery submits that Paddison did not change the passwords on the accounts and that the billing records should corroborate her telling of how she accomplished billing work post-March 23.

[12] Paddison and Lori Manville, who does accounting work for the law office, state that there was no vacation policy. Kingsbery disputes this fact: "I was paid vacation pay for every year since 2014" and "[T]he audit showed me being paid for times I was not at work because I was being paid for vacation, which Mr. Paddison surely knew." Kingsbery's sister, who also worked for the law office, likewise swears that she took paid vacation. Even more confounding, Paddison seems to agree that it appears that Kingsbery indeed was paid for some time off while on vacation. Yet Paddison characterizes his law office's "no-vacation-policy" as an undisputed fact with no regard for the case law Kingsbery cites in support of her contention that, in Louisiana, absent an established written policy, an employee is entitled to vacation accrued but not taken. See Picard v. Vermilion Parish Sch. Bd., 742 So. 2d 589, 591-93 (La.App. 3 Cir. 6/23/99).

- Whether the plaintiff or the defendants requested furlough for the plaintiff under the CARES Act.

There being no written employment agreement or employment policies of record, when the employment arrangement deteriorated, it became vulnerable to misunderstanding and abuse by both sides ... it is no surprise that most of the evidence submitted is contained in contradictory self-serving affidavits offered by Kingsbery and Paddison. With their combative tit-for-tat, each essentially calls the other a liar.[13] On summary judgment, the Court is not permitted to make credibility determinations. Because there are genuine disputes as to almost, if not all, material facts, summary judgment on the plaintiff's LWPA claims is wholly inappropriate.

**\*\*\***

Counsel shall once again be mindful of 28 U.S.C. § 1927. Counsel shall at all times discharge their professional responsibilities and refrain from internalizing their client's disagreements and apparent ill-will.[14] The parties and their

---

[13] For example, the plaintiff suggests that "[t]he entirety of Mr. Paddison's paragraph 14 [of his sworn statement] is a fabrication." If it becomes apparent that either party, or both, has lied under oath, the Court will not hesitate to refer the matter for investigation and prosecution by the United States Attorney.

[14] Portions of the parties' sworn statements digress sharply from the relevant issues, which detracts from the Court's ability to resolve any issues presented in this case. For example, at paragraph 13 of his most recent sworn statement, Paddison describes how the quality of Kingsbery's job performance began to slip in

17

attorneys would do well to consider participating in mediation with the magistrate judge or a private mediation: parties *and attorneys* would benefit from neutral objectivity in sorting through the he-said/she-said pervading the motion practice in this case.

IT IS ORDERED: that the defendants' motion for summary judgment is DENIED.  IT IS FURTHER ORDERED: that counsel for each side shall serve on their respective clients a copy of this Order and Reasons and, not later than five days from entry of this Order and Reasons, both shall certify in the record that service has been accomplished.

New Orleans, Louisiana, October 26, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

2019.  Apropos of which issue in this case, it is not clear.  And, for her part, Kingsbery offers under oath that Paddison "would often raise his voice at me in the most unpleasant way when I attempted to exercise independent docent judgment."